Staples J.
delivered the opinion of the court.
This contract was entered into with reference to Confederate treasury notes as a standard of value. This, if not conceded by the parties, is clearly established by the evidence. The debt must therefore be scaled, unless it is made to appear, that according to the true understanding and agreement of the parties, it was to be discharged in a currency not liable to the scale of depreciation. The appellant relies upon the bond to show that the debtor agreed to pay in a sound currency. The promise is to pay “six years after date in current money of Virginia.” It is, however, very apparent, that these words were used not so much to designate a particular medium of payment, as to exclude the inference of a contract to pay in coin.
In none of the conversations or negotiations preceding or contemporaneous with the loan, was anything said as to the Mnd of currency in which the debt was to be paid. In the correspondence of the parties no reference whatever is made to the subject. *909 The appellant, in his petition, admits there is no evidence of an agreement as to the kind of currency in which the debt was to be paid, other than what ap pears upon the face of the bond. The proposition to pay in six years emanated from the debtor, and was acceded to by the creditor, as a measure of indulgence. The promise to pay “in current money” does not necessarily indicate an agreement to pay the nominal amount of the debt in such money, at the maturity of the contract. These words are sometimes used to express a contract of hazard, in which both parties assume the risk of the currency in use when the debt is payable. This court is always reluctant, however, to adopt a construction of the contract which leads to a construction which might often deprive the creditor of any recovery whatever.
But in this case there is nothing from which it can be inferred, that either party contemplated an agreement of that kind. It was simply an application for a loan upon time, and the advancement of the money upon that application, followed by the execution of the bond and deed of trust.
In the deed of trust no reference is made to the kind of currency in which the debt is to be paid, although, in other respects, the terms of the contract are set out with great minuteness.
The next circumstance relied upon, as showing that both parties understood the debt as payable in a sound currency, at its nominal amount, is the correspondence between the appellee' and appellant since the close of the war. The letters of the appellee certainly do not show that he at any time claimed the right to scale the debt. It may be said, on the other hand, they do not show any distinct admission of an obligation to pay the whole amount of the bond. It is very probable *910 that the appellee supposed he was bound for the whole, and did not understand his right to insist upon the scale of depreciation. Still the court is not thereby precluded from an inquiry into the nature of the original transaction. It is very certain the letters contain nothing which changes the rights and obligations of the parties.
The debt being a proper one for the scale of depreciation, it is agreed that the scale must be applied as of the date of the contract. The real controversy is as to ■the mode of dealing with the payments made from the years 1865 to 1869 inclusive. These payments were made in United States currency, which was then greatly depreciated, the depreciation varying considerably at the several periods of payment. In reducing the nominal amount of Confederate-debts to their gold value under the statute, this court has adopted the practice of adding the premium to such value. The debtor may pay in gold if he pleases, or he may pay in currency; but the injustice can never be tolerated of allowing him to pay the gold value in a depreciated currency greatly less than such value.
Here, however, it is insisted that the payments must be also scaled to the gold value. It is urged with great force, that during all the time the appellee was making his payments and asking for indulgence, on no' occasion did he ever intimate a purpose to insist upon scaling the debt; that his conduct was such as to delude the appellant into the belief that he intended to pay the face of the bond, and under this impression the appellant received the currency at its par value, ■and gave the credit accordingly.
To this it is answered, there is no rule of law authorizing payments to be scaled; that the creditor having consented to receive the currency as money it *911 ■operates necessarily as an extinguishment of the debt pro tanto. Besides it is a mere matter of conjecture what the appellant, would have done. His necessities or the chance of a profitable speculation may have induced him to take the currency at par, although he must have known the debt was to be scaled. Instances are not rare in which creditors, both during and since the war, were very willing to accept a highly ■depreciated currency in payment of gold debts. It is very difficult to adopt any plan of scaling payments without injustice to the debtor, and great embarrassment in the administration of justice. All that can be safely done is to add the premium to the gold value of the debt as scaled, and then apply the payments to the aggregate thus ascertained. This as nearly approaches exact justice as any rule that can be adopted.
Complaint is made by the appellant, and very justly so, that the appellee is allowed interest upon these payments. The rule is well settled in Virginia, that interest is not to be computed on payments; but upon the debt to the time of payment; and the latter deducted from the sum of principal and interest. This rule is violated by the decree.
Another ground of complaint on the part of the appellant, is, that he is not allowed compound interest. The appellant might have collected his interest at the expiration of any six months according to his contract; but having failed to do so he cannot now convert that interest into principal so as to make it an interest-bearing fund. Even though the appellee had expressly agreed to pay such interest it would have been invalid, as hard and oppressive and tending to usury. Childers v. Deane, 4 Rand. 408-9. There is no error in this respect in the decree of the Circuit court.
*912 But for the errors already mentioned the decree must he reversed.
Christian J. dissented.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the Circuit court did not err in holding that the contract evidenced by the bond bearing date 18th April 1862, was entered into with reference to Confederate notes as a standard, of value, and that the debt was under the circumstances proper to be scaled as of the date of said contract. Nor did the said court err in holding that the payments made by the appellees were not subject to the scale of depreciation. Nor did said court err in holding that the appellant is not entitled to recover compound interest.
The court is of opinion that the Circuit court did err in holding that the appellee is entitled to interest upon the several payments made by him: The
rule being well settled, that interest is not to be computed on payments, but upon the debt to the time of each payment, and the latter deducted from the sum of principal and interest; and in the present case there is nothing warranting a departure from this rule.
The court is further of opinion, that the Circuit, court after reducing the appellant’s debt to the gold standard, and calculating the interest thereon to the date of the first payment made December 7th 1865, ought to have added thereto the premium of 11-| per cent, and then to have deducted from the aggregate amount thus ascertained the several payments made by the appellee.
*913 The court is further of opinion, that the Circuit court erred in decreeing a sale of the land embraced in the deed of trust upon a credit of one, two and three years. The deed having provided for a sale for cash, the Circuit court was not authorized to vary the terms of said deed without the consent of the creditor.
It is therefore adjudged, ordered and decreed, that so much of the decree of the Circuit court as is in conflict with the views herein announced, be reversed and annulled; and that the appellant do pay, &c.
And the same is remanded to the said Circuit court for further proceedings in conformity with the views herein expressed.
Decree reversed.