# CHARLESTOWN.

### HURST'S ADM'R *v.* HITE, ADM'R.

Submitted August 3, 1882—Decided August 25, 1882.

*(GREEN, JUDGE, Absent.)

| | | | |
|---|---|---|---|
| 20 | 188 | | |
| 38 | 290 | | |
| 20 | 188 | | |
| 47 | 145 | | |
| 20 | 188 | | |
| 49 | 293 | | |
| 20 | 183 | | |
| 55 | 118 | | |
| 20 | | 183 | |
| 64 | | 221 | |
| 20 | | 183 | |
| 66 | | 163 | |

1. The rule is, that where payments are made from time to time on a debt bearing interest, the interest is to be computed on the debt up to the time of payment, and the payment is to be deducted from the *amount*, principal and interest, and the balance forms a new capital ; on that balance interest is to be computed from that time, but the new capital must not be more than the former. If the payment be less than the interest due at the time, the surplus of interest must not augment the capital. (p. 193.)

2. It is error to compute interest on payments to a future day, when the debt is paid or settlement made, and then credit the payment and interest thereon upon the debt principal and interest. But it is not so as to offsets. (p. 193.)

3. In this case the statute of limitations did not cease to run against the defendant's offsets respectively, until the time the defendant's answer and accounts of offsets were filed in the cause. And as this suit was pending on the first day of April, 1869, when the Code of this State of 1868 took effect, and the defendant's answer and accounts of offsets were filed prior to the said first day of April, 1869, in computing the statute of limitations of five years as to such offsets the time between the seventeenth day of April, 1861, and the first day of March, 1865, should be counted out. (p. 194.)

4. Where service is performed by one at the instance and request of another, and especially where that other is personally benefited by the service, the law implies a contract, that the party, who performs the service, shall be paid a reasonable compensation therefor, unless there be something in the relation of the parties or the circumstances of the case, which precludes the idea of such compensation ; in which case there would be an implied argeement or understanding, that no such compensation was to be paid. (p. 202.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Jefferson rendered on the fifteenth day of April, 1875, in a cause in said court then pending, wherein the administrator of Hannah Hurst, deceased, was plaintiff,

*Counsel in the court below.

and Thomas Hite, in his own right and administrator of William G. Ferguson, deceased, was defendant, allowed upon the petition of said Hite.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

The bill in this case was filed by Wm. H. Travers, administrator with the will annexed of Hannah Hurst deceased, in the circuit court of the county of Jefferson at rules on the 1st Monday of March, 1868; but this suit was commenced on the 28th day of February, 1868. The bill in substance alleges, that on the 3d day of April, 1852, Thomas Hite of said county executed his bond to Wm. G. Ferguson for five hundred dollars, payable twelve months after date with legal interest from date; and on the 1st day of April, 1853, the said Hite executed his further bond to the said Ferguson for the further sum of five hundred dollars payable one day after date; and on the 19th day of March, 1855, the said Hite executed his other bond to said Ferguson for the further sum of one thousand dollars payable one day after date; that said Ferguson after all this and in the year 1855 died, having first duly made and declared his last will and testament, by which the said Hite was named as his executor, and the plaintiff's testatrix was made his legatee; that the said Hite duly qualified and assumed the duties of executor of said estate; that the plaintiff found among the papers of his testatrix, the late Hannah Hurst, the three several bonds above described, and says, he presumes from their being thus found in the possession of the legatee, that they were delivered to her by the said executor, Thomas Hite, in satisfaction *pro tanto* of her interest in said estate as legatee, but that there is no *assignment* by the said executor upon said bonds to the said legatee. The bill also alleges, that plaintiff has felt embarrassed by this state of facts in the institution of a suit at law to recover the amount of said bonds, as in the absence of any assignment the suit could only be properly brought in the name of the legal representative of said Ferguson, who is both execu-

tor and debtor.   The bill makes defendant thereto the said Thomas Hite, executor of Wm. G. Ferguson deceased, and said Hite in his own individual character as the obligor of said bonds, and prays for a decree against said Hite for the amount of said three bonds with their interest, and for such further decree, as may be just and proper.

Afterwards on the 16th day of April, 1868, the said Hite by leave of the court filed his answer to said bill; and the plaintiff made general replication thereto.

The answer of Hite to the bill, so far as is necessary to refer to it, is substantially as follows:   He admits, that he executed to Wm. G. Ferguson the two several bonds for five hundred dollars each at the dates mentioned in the bill, and that the first of said bonds bears interest from date; but he says, that he knows, that both of said bonds were given for a consideration proceeding from said Hannah Hurst and ought properly to have been executed to her.   He further says and alleges, that said Ferguson was her nephew, lived with her, managed her business and frequently took bonds and notes payable to himself, when they were really taken by him as agent for his aunt Hannah Hurst; that both of these bonds were given by him for so much money received by him from William Moore and Samuel Moore, executors of William Moore, upon orders signed by said Ferguson directing them respectively to pay said sums, the amount of rent due from them to said Hannah for a farm of hers rented to said William Moore; that against these two bonds, which should have been drawn payable to said Hannah, he has payments and offsets largely exceeding the amount of said bonds, and the said administrator (plaintiff) holds against him (defendant) another bond or note for five hundred dollars; that the character of said offsets are various moneys paid for her at sundry times, wheat furnished her, moneys paid to her, services rendered to her by respondent, as also by his hands, horses, &c., through many years; that for the items of his account, so far as they are remembered, he refers to the two accounts filed as a part of his answer marked "Respondent's Exhibit No. 1," and "Respondent's Exhibit No. 2;" that after the death of said Ferguson he (respondent), who was a neighbor of said Hannah, acted as her agent, transacting her business

for her, aiding her in the cultivation of her land by supply-
ing her with horses, hands, &c., and by his personal superin-
tendence of her business; that he also paid off for her with
his own funds many accounts against her, and also paid her
personally money, when she needed it; that all these
accounts he is ready and willing to have settled and is satis-
fied, that on a fair settlement the estate of said Hannah will
be in his debt after allowing said two bonds of five hundred
dollars each payable to said Ferguson as a part of her estate.

He admits that on the 19th day of March, 1855, he made
to said Ferguson another bond for one thousand dollars pay-
able one day after its date, and that the consideration of this
bond was money received by him of said Ferguson. He
also admits that said Ferguson died in the year 1855, having
first made his last will and testament; but he alleges, that he
(respondent) was not named as executor in said will; that by
said will all the estate real and personal of said Ferguson in
this State was left to said Hannah; that in July, 1855, he
(respondent) qualified as administrator with the will annexed
of said Ferguson; that all the personal property, which came
to his hands, was duly appraised by appraisers appointed by
the court, and was returned to the office of the recorder of
said county for recordation on the 13th of September, 1855,
a copy of which is made an exhibit marked "Respondent's
Exhibit No. 3."

He alleges, that he passed over all the personal property
of every sort, which had come into his hands, and which was
so appraised at four thousand, five hundred and ninety-three
dollars, to Hannah Hurst as the legatee under said will, and
took her receipt therefor; that the only other assets of the
estate of Wm. G. Ferguson, which came into his hands as
administrator, were four notes of small amounts, the makers
of three of which were insolvent, and the fourth, for fifty-one
dollars and twenty-two cents, was collected by him and paid
on a debt due from said Ferguson; that as administrator of
said Ferguson he has paid out some five hundred and forty
dollars and forty-eight cents not including interest on said
payments; that he files a list of said payments marked
"Respondent's Exhibit No. 4." He denies, that he ever
delivered to said Hannah the bonds named in the bill execu-

ted by him to said Ferguson in satisfaction *pro tanto* of her legacy, or in any other way.    He alleges, that on the contrary none of said bonds ever came into his possession at the death of said Ferguson, or immediately thereafter; that they (said bonds) were in the possession of said Hannah Hurst, she claimed, that all three of them properly belonged to her and ought to have been executed to her, and she refused to give them over to him as administrator of said Ferguson; that he was himself aware, that her claim, so far as the two five hundred dollar bonds went, was well founded; that he (respondent) is willing and desirous of settling his account as administrator with the will annexed of said Ferguson deceased, and after there shall have been allowed him as a credit on said one thousand dollar bond the amount due him on such settlement, he is willing to pay the balance, if anything, which may be due on said bond, should the court hold the same to belong to the estate of William G. Ferguson.

Exhibit No. 1 filed with said answer appears in the record and is headed, " Miss Hannah Hurst, to Thomas Hite, Dr." The first item in this account is dated March 28, 1858, and the last, July, 1862; and the total amount of it is one thousand one hundred and seventy dollars and forty-four cents. Exhibit No. 2 filed with said answer also appears in the record and is headed the same as said No. 1.    The first item of said account No. 2 is dated May, 1856, and the last, September, 1862, and amounts in the aggregate to one thousand seven hundred and twenty-five dollars.    Exhibit No. 3 filed with the answer purporting to be an inventory of the appraisement of the personal estate of said Ferguson deceased, is filed and is a part of the record.    This inventory amounts in the aggregate to four thousand five hundred and ninety-three dollars.    This inventory purports to be signed by the appraisers, and added to it is a memorandum of said Hite signed by him with reference to matters not mentioned in the inventory and not necessary to here state.    Exhibit No. 4 filed with said answer also appears in the record.    This exhibit is headed " Estate of Wm. G. Ferguson deceased, with Thos. Hite, administrator, Cr."    To said exhibit reference is made in the opinion so far as deemed necessary or

proper.    The defendant's said Exhibits Nos. 1 and 2 are each composed of various items.

It appears, that on the 28th day of April, 1868, the cause was heard on the bill, exhibits filed, the answer of defendant in his own right and as administrator with the will annexed of said Ferguson, deceased, and general replication to said answer; and the court decreed, that the cause be referred to Master Commissioner Fayman, who was instructed to examine the accounts set up by the defendant in his answer as discounts or payments upon the bonds exhibited with the bill, and make his report upon the same, stating all matters deemed pertinent by himself, or that any of the parties should require to have stated, and make return of his proceedings to the court.    It does not appear, that this decree was ever executed.    But it appears, that on the 28th day of April, 1873, the cause was again heard by the court upon the bill and exhibits filed, the answer of said defendant in his own right and as administrator with the will annexed of said Ferguson, deceased, and general replication to said answer; and by consent of parties by their attorneys it was decreed, that the cause be referred to a commissioner of the court, who was instructed to examine the accounts set up by the defendant in his answer as discounts or payments upon the bonds exhibited with the bill, and make his report upon the same, stating all matters deemed pertinent by himself, or that any of the parties should require to have stated, and make return of his proceedings to the court.

This decree commissioner Cleon Moore executed on the 21st day of March, 1874.    The said commissioner in his report ascertained the amount of said three bonds, executed by the defendant to said Ferguson, with interest up to 1st of October, 1873, to be four thousand three hundred and thirty-eight dollars and sixty-six cents and credited the defendant for the part of his said account No. 1, which was allowed, with interest thereon to said 1st day of October, 1873, amounting in the aggregate to three thousand one hundred and seventy-three dollars and twenty-nine and one-half cents, leaving a balance due the plaintiff as administrator of Hannah Hurst, on the 1st of October, 1873, of one thousand one hundred and ninety-five dollars and thirty-six and

one-half cents.   The commissioner in his report says, "that
he has carefully examined the offsets to the three bonds men-
tioned in the bill, and after allowing all lost claims for services
of Thomas Hite reports a balance of one thousand one hun-
dred and ninety-five dollars and thirty-six and one-half cents
due to Hannah Hurst's administrator on the 1st day of Oc-
tober, 1873."   To this report it appears the defendant, Hite
filed an exception as follows :

"Thos. Hite by his counsel, Thomas C. Green, excepts to
the commissioner's report above, because the commissioner
rejected the items of his claim filed with his answer for ser-
vices as follows :

"May 1856—For services and attention to her business,
&c., from May 1855, to May 1856..............$275 00
May 1857—For services and attention, to her business,
&c., from May 1856 to May 1857.............. 250 00
May 1858—For services and attention, &c., from May
1857 to May 1858..................................... 250 00
May 1859—For services and attention, &c., from May
1858 to May 1859..................................... 100 00
May 1860—For services, &c., from May 1859 to May
1860 ..................................................... 250 00
May 1861—For services from May 1860 to May 1861... 250 00
May 1862—For services from May 1861 to May 1862.... 250 00
Sept. 1862—For services, &c., from May 1862 to her
death, in Sept. 1862................................. 100 00

and asks all evidence bearing on these items of charge on
both sides be returned.

"Thos. Hite,

"By his counsel, T. C. Green."

It appears that the plaintiff excepted to said report, as fol-
lows, viz. :

"The complainant excepts to the commissioner's report, so
far as the allowance of the following items of account has
been made :

"1858, March 28—Balance of account rendered..............$47 35
1858, April 30—Amount paid McIntyre (dower deed)... 30 00
1858, April 30—Paid J. P. Brown, insurance................ 29 34

on the ground of insufficiency of proof and the bar of the
statute of limitations, which is hereby pleaded; and also to

the following items on the ground of insufficiency of the testimony:

```
" '1859, October 2—161 bushels wheat.............................$184 61
  1859, October 26—To cash .......................................  200 00
  1860, November 21—Cash..........................................  155 00
  1861, December 20—Cash.................... .......................   60 00
  1862, April 11—Shoe bill for negroes...........................   49 62
  1862, July 15—Cash paid harvest hands in full...........   19 75'
```

"*March* 25, 1874.                              "W. H. Travers.

"*Administrator d. b. n. c. t. a. compl't.*"

It appears, that on the 25th day of April, 1874, the case was heard by the court on the papers formerly read and the said report of Commissioner Moore of date 21st of March, 1874, and defendant's exceptions thereto filed before the commissioner in his office, and on the notice given and endorsed on said report on March 25, 1874, after the said report had been returned to the clerk's office and filed; that the complainant relied on the act of limitations in bar of the defendant's accounts, and on the exception of the plaintiff endorsed on said report and dated and filed March 25, 1874.·

After said report had been returned and filed in the clerk's office, the court decreed, that the cause be recommitted to Commissioner Cleon Moore, with instructions to execute the order of the court of April, 1873, allowing the plaintiff to rely on the statute of limitations, so far as the same may be applicable, and so far as it is not removed by any facts, which may be proven before him.   On the 3d day of October, 1874, the said commissioner made his report to the court under the last named decree.   In this report the commissioner says, he allowed "all claims against the estate of Hannah Hurst and against the estate of W. G. Ferguson except the claims of Hite against Hurst's estate for services rendered to Miss Hannah Hurst in her life-time."   He also says: "I return the evidence to the court on this subject at the request of Thomas Hite's counsel, who excepts to the action of the commissioner in making no allowance to Thomas Hite for services claimed," and he gives the names of the depositions of the witnesses upon said subject, which he returned.

The defendant, Hite, by his counsel filed a written exception to the second report of said commissioner of the same

purport and effect as his said exception to the first report of the commissioner.    The plaintiff also filed exceptions to the second report of said commissioner, which are substantially the same as his said exceptions filed to said first report.    In the said second report the commissioner calculated interest on said three bonds in the bill mentioned from the time when they were respectively payable until the 1st day of October, 1874, and he ascertains the aggregate of principal and interest due on them at the last named date to be four thousand, four hundred and seventy-six dollars and sixty-six cents.    The commissioner in his second report also calculated interest on the credits, which he allowed the defendant up to the date last aforesaid; and he ascertains the aggregate of principal and interest of said credits at the date last aforesaid to be three thousand, five hundred and forty dollars and forty-six cents, and the balance due Hannah Hurst's administrator on the date last aforesaid to be nine hundred and thirty-six dollars and twenty cents.    The commissioner in his last report allows the defendant the same credits, which he allowed in the first and some more.

It appears, that on the 15th day of April, 1875, the cause came on again to be heard on the papers formerly read, and on the report of said Commissioner Moore, returned on the 20th day of October, 1874, and upon the exceptions of the plaintiff and defendant, made thereto, and the depositions of the witnesses and exhibits; and the court overruled the exceptions as well of the plaintiff as. of the defendant and confirmed the said report in all respects; and the court in its decree further recites and decrees as follows:    " And it appearing therefrom, that there is a balance due from the said defendant to the plaintiff of nine hundred and thirty-six dollars and twenty cents with interest thereon from the 1st day of October, 1874, the court doth adjudge, order and decree, that the defendant, Thomas Hite, do pay to the plaintiff, Wm. H. Travers administrator *d. b. n. c. t. a.* of Hannah Hurst deceased, the said sum of nine hundred and thirty-six dollars and twenty cents with interest thereon at the rate of six per cent per annum from the 1st day of October, 1874, and his costs by him about his suit in this behalf expended."

From this decree the said defendant obtained an appeal and *supersedeas* to this Court. It appears that the whole record of the case was never brought into this Court upon this appeal, &c., but only a part, all of which is referred to in the opinion as well also as so much of the depositions appearing in the record as now before this Court, as is deemed necessary to a right understanding of the case.

*McDonald & Beckwith* for appellant cited 24 Gratt. 74; Code ch. 130; 3 Johns. 300; 5 Cow. 531; 14 Johns. 187; 12 Johns. 188; 11 Mass. 37; 13 Johns. 379; 10 Johns. 242; 11 Vt. 214; 13 Wind. 458; 14 Mass. 175; 4 Pick. 101; 4 Blackf. 493, 5 Gill. & J. 240; 2 Brev. s. p. 108; 24 Wind. 64; Chitt. Cont. s. p. 472 Note 1; 2 Munf. 345; 2 Rob. (old) Prac. 883; 6 Johns. 591.

*William H. Travers* for appellee cited Add. Cont. § 851; Cont. 542.

HAYMOND, JUDGE, announced the opinion of the Court:

It now appears, that no part of the depositions taken by the defendant to prove the items of his account No. 1, filed with his answer as an exhibit, was copied into the record of this case by the clerk of the court below except so much thereof, as bears upon the items of the defendant's account No. 2, filed with his answer as an exhibit; that much of the evidence, upon which the commissioner acted in allowing the defendant, Hite, the credits he did in his report, was not copied into the record before us by the said clerk by direction of counsel, but it seems, that all the papers in the cause and depositions, which were before the commissioner, and upon which he acted in making up each of his reports, were among the papers of the cause and before the circuit court, when it heard the cause and overruled the exceptions of both parties filed to the commissioner's second report and confirmed said report and decreed thereon against the defendant, on the 15th day of April, 1875. It now appears, that since the record before us was made by said clerk, upon which to found the application for this appeal and *supersedeas* (which was granted), and since said appeal and *supersedeas* were allowed, all the original papers of this cause on file in

the circuit court have been lost or mislaid and cannot be found, and in consequence thereof copies of none of the depositions or papers in the cause, which were not copied into the record by the clerk as aforesaid, can now be had or procured; but it appears, that the depositions and papers not copied into the record before us, and which were before the commissioner, and on which he based his second report, in so far as he allowed credits to the defendant as shown by that report, proved those credits; but it does not appear, whether the evidence before the commissioner proved, that they were properly payments or offsets against plaintiff's claim.   I am inclined to the opinion however from the defendant's answer and the manner, in which he filed his accounts, in connection with depositions in the cause, that all of them or nearly all were properly offsets and not payments so far as they were properly allowed as offsets against the three bonds in the bill mentioned.   It is evident from the manner, in which the commissioner treated them, that he regarded them in the calculation of interest thereon as offsets and not payments. The rule is, that when payments are made from time to time on a debt bearing interest, the interest is to be computed on the debt up to the time of payment, and the payment is to be deducted from the amount, principal and interest.   It is error to compute interest on payments to a future day, when the debt is paid or settlement made, and then credit the payment and interest thereon upon the debt, principal and interest. *Fultz* v. *Davis*, 26 Gratt. 903.   It is error in a commissioner to allow interest on part payments of a judgment; the proper rule is to bring the interest on the principal sum up to the date of each payment, and in case the interest exceeds the payment deduct it from the amount of that payment, thus making partial payments first applicable to the interest.   *De Ende, &c.*, v. *Wilkinson's administrator; Same* v. *Tait*, 2 Pat. & H. 663.

In the case of *Lightfoot* v. *Price*, 4 H. & M. 431, 432, the chancellor said:   "I concur in the opinion given by the late judge of this court in the case of *Ross* v. *Pleasants, Shen & Co. and William Anderson*, that so much of any payment, as is equal or exceeds the interest, is to be applied to the discharge thereof, and the residue towards discharging the prin-

cipal, unless the debtor at the time of the payment or before directed otherwise; that is to say, from the sum of principal and interest, computing the latter to the time of payment is to be deducted the payment and the balance forms a new capital; on that interest is to be computed from that time, but with the caution, that the new capital be not more than the former, so that, if the payment be less than the interest due at the time, the surplus of interest must not augument the remaining capital, because this would give interest upon interest, which would be unlawful." The rule as to offsets I apprehend is different; and it was not error to calculate interest upon offsets, as was done by the commissioner in this case.

In this case the statute of limitations did not cease to run against each of the defendant's offsets respectively, until the time of defendant's answer and accounts of offset were filed in the cause. Code of W. Va., chapter 126 section 9; Kelly's Revised Statutes, chapter 154 section 9 and note thereto; *Moore v. Luckess' next of kin,* 23 Gratt. 166, 167. Sometimes, what might appear at first view to be an offset, may properly be treated as a payment on a bond, when it appears, that it was agreed by the parties, that it should be a payment. 5 Gratt. 475. See on this subject further, Angel on Limitations (4th edition) § 75, note 2; *King* v. *King* 1 Stockt. (N. J.) 44. It appears in this case, that about the 1st of January, 1856, the defendant executed his bond to said Hannah Hurst for five hundred dollars borrowed money, and this bond together with the three bonds of the defendant to Ferguson in the bill mentioned were in the possession of the said Hannah Hurst at her death, and after her death the plaintiff found them all among the papers of the said Hannah. The plaintiff brought an action at law against the defendant to recover the amount of the said bond for five hundred dollars from the defendant, which the defendant executed to said Hannah Hurst with its interest; and this action at law, I infer from what appears in this case, is still pending. The defendant, in order to prove his accounts filed in this cause, took the deposition of James V. Moore who deposes as follows:

"Question by defendant's attorney—Do you know of any

services rendered by Col. Thomas Hite for Miss Hannah Hurst as her agent or otherwise? If so state it.

"Answer—I frequently have been there and seen Col. Hite's hands helping her to harvest, thrash and seeding, &c., during busy times; and in the fall of 1859 I was over at Hite's house after some seed-wheat; aunt Hannah Hurst's two wagons were there loading wheat, and I called at her house in company with Col. Hite that evening after coming from his house; and he paid her two hundred dollars in money, and she told the Col. to charge her with the seed-wheat.

"Question by same—State all that took place on the evening, to which you refer in your last answer, between the parties.

"Answer—After the Col. had paid her the two hundred dollars, he remarked to her, that he ought to have that note of his given to her for five hundred dollars, as he knew it was paid. She remarked, that she knew that note was paid; and the Col. remarked about the two notes of Ferguson's, that she claimed as her own notes, that she ought to give up those notes too, or gross receipts, as he wanted to settle up Ferguson's estate; she told him to charge up those two notes as they were hers, and when it was convenient she would give them up. It was late in the evening. She also said, that any other notes or accounts he had against her he should charge up against her, as she wanted him paid. That is all that took place that night. The Col. remarked that if she wanted any more money she could have it at any time.

Question by same—Was there anything said in this conversation about the amount of the two notes of Ferguson? If so, what? And did you understand what Ferguson it was that these two notes were given to?

"Answer—The notes given to Wm. G. Ferguson; I think the notes were for five hundred dollars each."

Question by same—Did you ever hear your aunt, Hannah Hurst, say anything at any other time about her affairs with Col. Thomas Hite? If so, state what and where.

"Answer—On the same night we were there, the Col. remarked to her something about these notes or Ferguson's business; and she remarked to him, that it was all hers; and the Col. told her that night the impropriety of holding

these notes; if anything should happen he might be put to trouble. She told him it was her business, and that she wanted him to go on and attend to her business, as he had been attending to it, and that she wanted him paid for all the trouble he had for attending to her business. The Col. made some remark, but don't recollect what remark it was, as I was off a good ways. She told him, that none of her relations would attend to it, and that she wanted him to continue as he had heretofore. I was there frequently after that; and her remarks were pretty generally the same, that none of her relations would attend to it. I told her, that I thought she was a little hard on her relations."

Question by same—Do you know what quantity of seed-wheat Col. Hite let Miss Hannah Hurst have at the time, to which you have heretofore referred?

"Answer—I cannot say how much there was. She had two wagons there and they were pretty full. I judge there was 125 or 130 bushels—may be more—and I knew that she spoke that night of sending up for more—enough to sow another field that the Col. advised her that night to put in. I think I gave one dollar and fifteen cents a bushel for it that year."

Question by same—Do you know whether your aunt, Hannah Hurst, got the other seed wheat that fall of Col. Thomas Hite to seed the field, of which they spoke?

"Answer—I cannot answer that positively. I knew the field was sowed, and she told him she was going to send for the wheat. It would have taken about thirty bushels to seed that field."

Question by same—State how long before the death of Miss Hannah Hurst had you seen Col. Hite's hands at your aunt Hannah Hurst's harvesting, threshing, seeding, &c., during busy times, and for what length of time did Col. Thomas Hite so help her?

"Answer—For off and on for the last eight or ten years before her death. She died, I think, in the fall of 1862."

Question by same—During the period referred to in your last answer have you any knowledge of Col. Thomas Hite's horses being employed at any time in the service of your

aunt, Hannah Hurst?   If so, state what knowledge you have on this subject.

"Answer—His horses were down helping her thresh wheat, delivering her wheat, and seeding, and I think I have seen them there once or twice helping to haul in but I won't be positive about that.   Every year I saw them down there for the last six or eight years before her death, and they were there more at the latter part of the time than the first part."

Question by same—Do you know of any service rendered by Col. Thos. Hite for your aunt, Hannah Hurst, in attending to her business; and if so, what do you know on this subject?

"Answer—He attended to her business after the death of Wm. G. Ferguson up to her death.   Wm. G. Ferguson died either in the fall of 1854 or in the spring of 1855.   I think it was in the spring of 1855.

From the evidence of said Moore in connection with other facts it seems to me, that it may be properly considered under his answers to the first two questions, that the two hundred dollars, paid by defendant to said Hannah by said Hite was paid by him on the bond for five hundred dollars, which he had executed to her, for which the action at law is pending; and that it was considered by the parties at the time, that the wheat of which said Moore speaks together with the other items charged in the defendant's said account exhibit No. 1 filed by him with his answer preceding the charge of two hundred dollars cash, the ninth item in said account commencing with the charge of forty-seven dollars and thirty-five cents, paid the said bond for five hundred dollars executed to said Hannah.   It may be seen by reference to said account, that the first nine items thereof in the aggregate amount to the sum of five hundred and forty-six dollars and twenty-four cents which is in the neighborhood of the amount of said bond at the date of said charge of two hundred dollars, which is the 26th day of October, 1859.   Moore in the last part of his first answer says:  "He (Hite) paid her (Hannah) two hundred dollars in money, and she told the Colonel to charge her with the seed-wheat."   In his second answer he says:  "After the Colonel had paid her the two hundred dollars he remarked to her that he ought to have that note of his given to her for

five hundred dollars as he knew it was paid and she remarked that she knew that note was paid." Neither party stated how it was paid; but I think it may be reasonably inferred, that the parties considered it was paid by the said cash payment of two hundred dollars, and the other items of said account preceding that item. If the said two hundred dollars cash payment was not paid on said bond for five hundred dollars, on what was it paid? And if the said bond for five hundred dollars was paid, how was it paid, if not as I have supposed? After the defendant paid her the two hundred dollars, he said to her, that he ought to have the "note" of his given to her for five hundred dollars, as he knew it was paid, and she said she knew it was paid. Nothing was said about said two hundred dollars being paid on any other note or bond. It is true, that it is claimed, that the defendant had previously paid the said bond for five hundred dollars in services rendered as charged in said account, exhibit No. 2, filed with his answer; but the defendant has not in his account or otherwise treated that account or any part of it as a payment of said bond for five hundred dollars. I will speak more of that account hereafter in the appropriate place.

Considering the said first nine items of defendant's said account No. 1 as being proven before the commissioner as correct charges against the estate of said Hannah deceased I do not consider, that they are or should be applied as payments on or offsets against any of the said three bonds given by the defendant to said Wm. G. Ferguson, because it seems to me, that said Hannah and said Hite in the fall of 1859, appropriated them to the said bond for five hundred dollars given by said Hite to said Hannah in payment thereof, and that said Hannah at that time acknowledged, that said last named five hundred dollars bond was paid or thereabouts by said nine items considering them about equal in amount to said bond for five hundred dollars to her, at that time. If these said nine items are allowed to the defendant in this suit as payments or offsets against the bonds executed by the defendant to said W. G. Ferguson in the bill mentioned, the effect would be to appropriate these items differently, as I think, from what the said Hannah and defendant appropri-

ated them ; and the result would be, that the defendant by reason of the acknowledgment of the said Hannah, that said bond for five hundred dollars given to her by defendant had been paid, would defeat the plaintiff's action at law upon said last named bond, and thereby in effect obtain and realize credit twice for said nine items, which would be unjust.

It is true, that witness Moore says, in substance, that when said Hannah remarked, that she knew the defendant's note for five hundred dollars executed to her was paid, the defendant remarked to said Hannah about the two notes of Ferguson, which she claims as her own notes; that she ought to give up those two notes or a gross receipt, as he wanted to settle up Ferguson's estate, and she told him to charge up these notes, as they were hers, and when it was convenient she would give them up.   It must be remembered, that the defendant in his answer admits in effect, that said Hannah was in fact at least the rightful equitable owner of said two bonds for five hundred dollars each given by defendant to said Ferguson at the time, when they were executed; that the consideration, for which they were given, was her property ; and that they were executed to said Ferguson, only because he was her agent and so acting and frequently transacted her business in that way.   The bond for one thousand dollars the defendant in his answer says, was given to said Ferguson for money received of him.   The defendant in his answer further says :   "He denies, that he ever delivered to Miss Hannah Hurst the bonds named in the bill executed by respondent to Wm. G. Ferguson in satisfaction *pro tanto* of her legacy or in any other way.   On the contrary, none of said bonds ever came into the possession of your respondent at the death of said Wm. G. Ferguson or immediately thereafter.   They were in the possession of Hannah Hurst, who claimed, that all three of them properly belonged to her and ought to have been executed to her, and she refused to give them up to your respondent as administrator of Wm. G. Ferguson deceased.   Your respondent was himself aware, that her claim, so far as the two bonds for five hundred dollars went, was well founded."

With the aid of these admissions of the defendant the substantial meaning of the said conversation deposed to by said

Moore as to the said two bonds for five hundred dollars, I think, may be ascertained. Moore does not say, that the defendant in said conversation claimed or said, that these two bonds for five hundred dollars each had been *paid* to said Hannah or had been *satisfied*; nor does he say, that said Hannah acknowledged, that they had been *paid* or *satisfied*. The defendant claimed according to his answer, that as administrator he was entitled to all three of the bonds executed by defendant to said Ferguson; but the said Hannah refused to give them up to him. I infer from all this and from other parts of said Moore's deposition, so far as above quoted by me, that when the defendant remarked about the said two bonds for five hundred dollars each as stated by said Moore and said Hannah replied to him, charge up these two "notes" (meaning bonds) as they were hers, and when it was convenient she would deliver said two bonds to defendant for the purpose of enabling him to account or settle for the same as administrator as aforesaid, that difficulty might be avoided, and not because they had been paid. If defendant considered, that said two bonds for five hundred dollars were paid at the time of said conversation, he would most probably have so said, as he did as to the bond for five hundred dollars he made to said Hannah.

It seems that between the 15th day of July, 1855, and the time of the said conversation the defendant had paid out of his own funds several hundred dollars in settlement of the debts and liabilities of the estate of said Ferguson, deceased, and as he had delivered to said Hannah the personal property of said Ferguson received by defendant as administrator as aforesaid, he was entitled to be reimbursed by said Hannah for the money so paid out of said bond for one thousand dollars or otherwise; and the defendant at the close of his said answer says: "Your respondent is willing and desirous of settling his account as administrator with the will annexed of Wm. G. Ferguson, deceased, and after there shall have been allowed him as a credit on said bond, for one thousand dollars, the amount due him on such settlement, he is willing to pay the balance, if anything, which may be due on said bonds. The amount paid by defendant out of his own funds in settlement of the debts and liabilities of the estate of said Ferguson,

deceased, and in fact the full amount claimed by him to be due him from the estate of said Ferguson was allowed him by the commissioner in each of his reports; and he had and received the full benefit thereof in said report without exception or objection.

This action was pending on the 1st day of April, 1869, when the Code of this State of 1868 took effect; and in computing the time the statute of limitations runs against said nine items or any of them treating them as offsets in this suit the time between the 17th day of April, 1861, and the first day of March, 1865, that is three years, ten months and fourteen days must be counted out, which operates in effect an extension of the statute of limitations of five years to the period of eight years, ten months and fourteen days; and applying the statute of limitations thus extended to these nine items as charged in said account No. 1 several of said items, as charged in said account, were barred at the time defendant filed his answer and accounts of offset; and the part of said items so barred should have been excluded from his said second report for that cause, if no other, so far as I can now see. I therefore am of opinion, that the circuit court erred in confirming the said second report of said Commissioner Moore, in so far as he allowed the defendant credit for said first nine items in defendant's said account No. 1 and interest on said credits in his said second report as against the three bonds or any of the three bonds of the defendant in the bills mentioned.

The said nine items and interest as allowed the defendant, in his said second report are as follows, viz :

| | | |
|---|--:|--:|
| 1858, March 28—By amount of balance account rendered ...............................................................$ | 47 | 35 |
| Interest to October 1, 1874.......................................... | 46 | 62 |
| April 30—By amount paid McIntyre (clover seed)...... | 30 | 00 |
| Interest to October 1, 1874.......................................... | 29 | 55 |
| April 30—By amount paid J. P. Brown, insurance..... | 29 | 34 |
| Interest to October 1, 1874.......................................... | 28 | 88 |
| 1859—By amount of Smith's account........................... | 6 | 60 |
| Interest to October 1, 1874.................................. ...... | 6 | 14 |
| April 30—By amount paid J. P. Brown, insurance..... | 29 | 34 |
| Interest to October, 1874.............................................. | 27 | 13 |
| 1859, May 3—By mares to horse................................... | 18 | 00 |
| Interest to October 1, 1874........................................... | 16 | 68 |

26

| | | |
|---|---|---|
| October 1—161 bushels wheat................................ | 184 | 11 |
| Interest to October 1, 1874 ................................ | 165 | 60 |
| 26—By amount Suddith's bill.............................. | 1 | 50 |
| Interest to October 1, 1874.............................. | 1 | 33 |
| By cash.................................................... | 200 | 00 |
| Interest to October 1, 1874.............................. | 179 | 14 |

These items the circuit court should have disallowed as being credits or offsets in this case as against the said three bonds of the defendant in the bill mentioned, although they are applicable as aforesaid to the said bond of five hundred dollars of the defendant to the said Hannah, upon which said action at law is pending by the plaintiff against the defendant, they having been appropriated to said last named bond by the said Hannah and the defendant during the life of the said Hannah. The commissioner's said second report as to all other items of credit, which it allows the defendant, is correct, including the items of credit, which he allows the defendant upon his account against the estate of W. G. Ferguson.

I now proceed to consider the exceptions of the defendant to the commissioner's said second report for rejecting the defendant's said account No. 2 against the estate of said Hannah Hurst, deceased. It is argued and claimed by the counsel for the appellee, that the commissioner and the circuit court did not err in this respect, because first, the services charged in that account so far as proved were rendered as a gratuity; and second, because the charges for services contained in said account are excessive and are not justified by the evidence; and third, because a large part of the account was barred by the statute of limitation, extended as aforesaid at the commencement of this suit.

It appears, that the said Wm. G. Ferguson died at Miss Hurst's house sometime in the early part of the year 1855, and shortly prior to the commencement of said account. Joshua Ferguson in his deposition taken by the plaintiff, testifies in substance, that he had had frequent conversations with the defendant respecting the business of said Hannah Hurst; that defendant said he had done and would continue to do all he could for her as a friend; and that from the friendship and intimacy, which had existed between him and the Hurst family for many years, he could not do too much

for them. He said, that what he had done for said Hannah Hurst, he did *gratis* and as a friend. He also spoke of the intimacy, which existed between him and Wm. G. Ferguson, deceased, who had lived with Hannah Hurst for many years previous to his death, and who died at her house; that he also told witness, that he promised Wm. G. Ferguson on his death-bed, that his aunt Hannah Hurst should never want for anything, while he, Hite, lived, and that he would be her friend; that witness from said conversation distinctly understood him to say, that he never intended to charge Hannah Hurst anything for any services, which he had rendered her, or might render during her life; that after the death of Wm. G. Ferguson Hannah Hurst gave Thomas Hite a horse and buggy and a gold watch, which he at first refused to take, and which she afterwards sent to him to his house, and which he kept; that he, Hite, told witness, that he at first refused to take said articles, for the reason that he did not intend to charge her for anything he had done for her; that these conversations between witness and defendant occurred in 1858, after the death of Wm. G. Ferguson, and during the life of Hannah Hurst; that defendant also told witness, that Hannah Hurst had frequently applied to him to write her will, which he declined doing, for the reason that he believed she intended or wanted to give him a portion of her estate; that he did not want any of it, and she had relatives, who needed her property much more than he did; that he also said the family of Hannah Hurst, including her father and her nephew, Wm. G. Ferguson, had always been his friends, and that he never intended to charge her for anything he had done for her; that he also spoke of exchanging labor with Hannah Hurst frequently, and said that he had furnished her more labor than she had him, and that he had more hands than she had.

Lucy S. Wysong, another witness, for the plaintiff in her deposition testifies, that in September, after the close of the war, the defendant spent the day at her house; and that at that time he spoke of Hannah Hurst's death and will; and he said the many little favors he had conferred on her were in gratitude for the many favors conferred on him by her father, which had made him what he was; and then said he did not

claim any other compensation for what he had done for her. But the defendant in his deposition testifies, that he never made any such statement to Mrs. Wysong or in her presence. The defendant however in his deposition does not admit or deny the statements of the defendant, testified to by said Joshua Ferguson as given above. In fact the defendant in his depositions does not in any way refer to the testimony of said Joshua Ferguson.

It appears that on the twenty-eighth or thirty-first day of March, 1858, the said Hannah Hurst and defendant, had a settlement of accounts and at that time there was due on the accounts settled forty-seven dollars and thirty-five cents, which is the first item charged in defendant's account No. 1. It does not distinctly appear whether this was intended by the parties as a settlement of all their open accounts up to that day or not, but I think it does appear that the defendant's present claim for services was not included in the settlement or mentioned therein as a claim, but it does appear that said settlement embraced nothing but simple accounts. The defendant's account No. 2 for services commences in May 1856 and up to May 1858 he has charged in said account seven hundred and fifty dollars.

In Chitty on Contracts (6th Am. ed.) 542 it is said that "where it is expressly agreed between the parties that the work shall be *gratuitously* done, the contract is *nudum factum* and the party undertaking to execute the work is not bound to enter upon and perform it; though he becomes liable, if having actually proceeded on the employment, he be guilty of any *misfeasance* in the course thereof, to the injury of the other." Mr. Chitty at same page and page 542, says: "An action can not be maintained for services performed with a view to a legacy, and not in expectation of a reward in the nature of a debt. And if a father-in-law educate and maintain his infant son-in-law obviously from mere kindness by way of gratuity he can not support a claim to remuneration when the child obtains his full age."

In the case of *Newell* v. *Keith* 11 Vt. it was held, according to Mr. Chitty 542 that, "if personal services be rendered by one person for another, at the request of the latter, an action will lie for them, unless it appears from the whole evidence

that they were designed to be *gratitious*, and this is matter of fact to be found by the jury." The 11th Vermont is not in the library at this place and I therefore can not now see it.

In the case of *Harshberger's adm'r et als.*, v. *Alger and wife et als.*, 31 Gratt. 52, it was held according to the syllabus, as follows: "7. In this case there having been no express contract found, and so far as appears, no claim or mention of such compensation by either the mother or daughter during the mother's life, and the services having been such as any child, prompted by filial affection and impelled by a sense of duty, might be expected, under the circumstances, to render cheerfully to an aged mother, a contract can not be implied; and A can not recover."

In the case of *Armstrong's heirs* v. *Walkup et als.*, 9 Gratt. 372, it was held: "A guardian of infants is entitled to compensation for their support, though he may have promised their friends that he would not make any charge for it, and in fact kept no account against them." Judge Samuels in delivering the opinion of the court at pp. 375-6 says: "There is proof in the record tending to show that Armstrong did so promise; yet as he was under no previous obligation to support and educate them at his own expense, a promise to do so was made without consideration, and would not be binding upon him. The office he held made it his duty to take care of the persons and property of his wards, and to provide for their support and education out of the profits of their estate. A mere promise to persons having no authority to contract on the subject, and for no consideration, does not affect the rights of the guardian to have compensation. *Hooper* v. *Royster*, 1 Munf. 119."

In the case of *Rea's adm'r* v. *Trotter & Bro.*, 26 Gratt. 585, the third section of the syllabus is as follows: "T. stores goods with R.; and nothing is said as to the compensation, which R. is to receive for their storage. The law implies a contract that R. shall be paid a reasonable compensation therefor, unless there be something in the relation of the parties or the circumstances of the case which precludes the idea of such compensation, in which case there would be an implied agreement or understandinding that no such compensation was to be paid." In this case Judge Moncure in delivering

the opinion of the court at page 592 says: "Where service is performed by one at the instance and request of another and especially where that other is personally benefited by the service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor, unless there be something in the relation of the parties or the circumstances of the case which precludes the idea of such compensation; in which case there would be an implied agreement or understanding that no such compensation was to be paid. This is an undeniable principle of law, which applies to almost every case of *assumpsit* on a *quantum meruit.*"

I think Judge Moncure states the law correctly. It appears that Hannah Hurst died in September, 1862. The defendant is not a competent witness to testify in this case, as it stands, in his own behalf as to any transaction or communication had personally with the plaintiff's intestate. Code of 1868 chap. 130, sec. 23, paragraph II. Neither is he competent under said twenty-third section to testify in his own behalf as to his work and labor or services rendered for Hannah Hurst, deceased, or what things he did in and about, the services he claims in his said accounts to have performed for the said Hannah Hurst in her lifetime, or to testify, as to any contract or agreement made by him with said decedent in relation to said services or the value thereof, or as to payment therefor or how it was to be paid, or in relation to the bonds in the bill mentioned, or as to any matter or thing relating thereto or material to the cause, or as to any conversation or contracts had or made by him personally with said Hannah Hurst deceased. *Owens* v. *Owen's administrator,* 14 W. Va. 88; *Calwell* v. Prindle's adm'r. et al., 11 W. Va. 307; *French* v. *French* 14 W. Va. 458.

Under the said twenty-third section of said chapter 130 and the principles decided in said cases, as this case is presented, the most material parts of defendant's deposition filed in this cause must be excluded, and cannot be read as evidence; but that part of the same, in which he contradicts the statements of Mrs. Wysong in relation to a conversation of the defendant had with her or in her presence, is proper to be read. But after excluding the parts of the defendant's deposition

as to all matters, as to which he is incompetent to testify, there is still evidence proving, that the defendant did render services for said Hannah Hurst from the spring of 1855 up to and including a part of the year 1862; but the evidence as to the quantity and value of such services is not specific, but is general in its character. Still, I think, it is sufficient to establish, that the defendant, did render the said Hannah service as stated in his said account No. 2, and that the charges therefore are in part at least correct. I think from the evidence and circumstances appearing in the case, that many if not all the services rendered by the plaintiff for the decedent prior to the year 1859 were rendered as merely friendly acts gratuitously by the defendant, and that it was so understood by the parties, when and as they were rendered. It is true, that sometime after the death of said Wm. G. Ferguson and after the date, at which defendant's said account No. 2 commences, the said Hannah made the defendant a present of a horse and buggy and a gold watch, which the defendant accepted after first declining them upon the ground that he had no charges against said Hannah for any services he had rendered her, because they were rendered as acts of friendship, &c. Upon the horse and buggy and gold watch being sent to him at his house by the said Hannah as a present he did ultimately receive and accept them and appropriate them to his own use. Besides all this under the statute of limitations all the items of the defendant's said account prior to the 2d day of June, 1859, were barred by the statute of limitations at the time, when defendant's answer and accounts of setoff were filed in this cause, after counting out the three years, ten months and fourteen days aforesaid, and ought not for that reason to be allowed the defendant as credits or offsets in this case. But the evidence of James V. Moore above stated proves, that in the fall of 1859 the said Hannah requested the defendant to continue to attend to her business for her, and in effect promised, that he should be paid therefor. This being so, the defendant is I think, entitled to have allowed him as equitable offsets at least in this case as against the three bonds in the bill mentioned the following items of the said account N. 2, which were rejected by the commissioner and the circuit court, viz:

May, 1860—For services, &c., from May, 1859, to May,
 1860............................... ...................................\$250 00

May, 1861—For services from May, 1860, to May, 1861. 250 00

May, 1862—For services from May, 1861, to May, 1862  250 00

And I think the commissioner and the circuit court erred in refusing to allow the defendant the said last named items of his said account No. 2 as offsets to said three bonds in the bill mentioned; but I do not think, that the commissioner or the circuit court erred in rejecting the other items of defendant's said account No. 2, filed with his answer in this cause.   The last item of the defendant's said account No. 2, which is one hundred dollars, is disallowed upon the evidence of Edward E. Spaw chiefly.

I have now considered all the questions in this case, which I deem material or necessary.   By reason of the defective condition of the record owing to causes, which I have hereinbefore referred to, I have had great difficulty, and have been compelled to spend much time in arriving at a satisfactory conclusion in this case.   It is not improbable, that the conclusions, to which I have arrived, will not do exact justice between the parties; but, I think, they approximate it as nearly as may be under the circumstances.

For the foregoing reasons there is error in the decree of the circuit court of the county of Jefferson, rendered in this cause on the 15th day of April, 1875 ; and the same must therefore be reversed, set aside and annulled; and the appellee, William H. Travers, administrator, with the will annexed of Hannah Hurst deceased, must pay out of the assets in his hands to be administered to the appellant his costs about the prosecution of his appeal and *supersedeas* in this Court.   And this Court proceeding to render such decree in the cause, as the said circuit court of the county of Jefferson should have rendered, it is adjudged, ordered and decreed, that the exceptions of the plaintiff filed to the second report of Commissioner Cleon Moore made in this cause be in part sustained and in part overruled, and that the exceptions filed by the defendant to the said report be also sustained in part and in part overruled.   And it is further adjudged, ordered and decreed, that the said report of said commissioner be disaffirmed as to the first nine principal

items, which are allowed the defendant as credits in said report (including the items of interest thereon in said report allowed) the first of said principal items commencing "1858, March 28," and that the said principal items and interest be rejected as not proper to be allowed the defendant as credits or offsets upon or to the three bonds executed by the defendant, to Wm. G. Ferguson in his lifetime in the bill in this cause mentioned and described, they having been by the said Hannah Hurst during her life and the said defendant appropriated as payment on the bond for five hundred dollars executed by the defendant to the said Hannah Hurst during her life and mentioned and referred to in the defendant's answer filed in this cause; the court being of opinion, that the said items should be so applied.

It is further adjudged, ordered and decreed, that the defendant be allowed credit by way of offset in this cause for the fifth, sixth and seventh items in his account Exhibit No. 2, filed in this cause, as charged therein, as against the three bonds executed by the defendant to Wm. G. Ferguson; and that all the other items of the defendant's said account No. 2, filed with his said answer be rejected and disallowed. It is further adjudged, ordered and decreed, that this cause be remanded to the circuit court of the county of Jefferson with instructions to the said circuit court to recommit the said second report to one of its commissioners with instructions to said commissioner to restate the accounts in said report stated, excluding therefrom the said first nine items of credits or offsets and interest thereon, credited and allowed the defendant in said report; and that he allow the defendant all the other principal items of credit as off-sets, which are allowed or credited the defendant in said report with interest from the time allowed in said second report against the said three bonds executed by the defendant to Wm. G. Ferguson in the bill mentioned, treating each of said last named principal items in said report mentioned as being proved, including the principal items of the account of the defendant with the estate of Wm. G. Ferguson, deceased, as reported by said Commissioner Moore in his said second report; and that such commissioner, in addition to allowing the defendant all the principal items of credit and interest as aforesaid by

way of offset hereinbefore directed to be allowed the defendant against the said three bonds executed by the defendant to said Wm. G. Ferguson, do allow the defendant the said fifth, sixth and seventh items of his said account No. 2, filed with his answer, as charged therein, with interest thereon from the commencement of the year in which they severally accrued; and that such commissioner be instructed to report to the said circuit court the balance, if any, due the plaintiff upon the said three bonds and proper interest thereon executed by the defendant to the said Wm. G. Ferguson, deceased, in the bill mentioned after allowing the defendant said credits by way of offsets against the said three bonds; and that such other and further proceedings be had in this cause in the said circuit court as are in accordance with the principles and rules governing courts of equity.

JUDGES JOHNSON AND SNYDER CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.

---

# CHARLESTOWN.

Submitted August 3, 1882—Decided August 25, 1882.

