EIEED, P.
In 1830 Bacon Tait instituted suit in the Superior Court of Chancery for the Richmond District, against James P. Wilkinson of' Richmond, and Henry De Ende of New Orleans; the object of which was to obtain a settlement of certain partnership transactions in relation to purchasing and selling negroes, and to recover what might appear *to be due to the plaintiff upon the settlement of the partnership accounts. The defendants filed their separate answers to the plaintiff’s bill, denying that anything was due from the concern to Tait, but united with the plaintiff in his prayer to have the partnership accounts settled. We have not before us a complete record of the proceedings which were had in this suit, and *879 do not know what intervened in the cause between the filing' of the answers and the final decree of the 16th of March, 1839. De Ende died in New Orleans on the 29th of Majr, 1832. His will bears date 11th May, 1832, and was admitted to record in the Court of Probates in and for the parish and city of New Orleans, on the 7th of June, 1832. John R. Rewis, James McKenna and Philip Power, the executors therein named, qualified as such, possessed themselves of the estate of the testator, real and personal, of large amount, and assumed the execution of the duties of the succession. ' On the 3d of July, 1833, the General Court of Virginia, on motion of Bacon Tail, representing that Henry De Ende had died intestate out of the Commonweallb of Virginia, leaving estate in Virginia, made an order committing his estate to Charles Womack, sheriff of Cumberland county, for administration according to law, and after that was done, but at what time does not appear, the suit brought by Tait against Wilkinson and De Ende in the Chancery Court at Richmond, was revived as to De Ende, against Charles Womack, sheriff, administrator of De Ende. On the 16th of March, 1839, a final decree was rendered in the cause in favor of Bacon Tait, against Wo-mack, sheriff, administrator of De Ende, de bonis testatoris, for S3,761 85, with interest from 31st March, 1831, until paid, and in favor of Wilkinson for $7,402 42, with interest from same time until paid. On the 30th March, 1837, Wilkinson filed a petition, and on the 25th of June, 1839, a supplemental petition, in the Court of Probates, for the city and parish of New ^'Orleans, against the executors of De Ende, claiming of them payment of the debt ascertained tobe due by the decree rendered by the Chancery Court at Richmond. These petitions were answered, and the right to recover resisted by the executors, and also by Eliza De Ende, Rouisa De Ende, and Caroline De Ende, three of the legatees of Henry De Ende, who had intervened and become defendants in the suit thus instituted in the Court of Probates by Wilkinson. On the 30th April, 1841, Bacon Tait filed his petition against the executors in the same Court of Probates, together with a copy of the decree in the Richmond suit, and prayed that the executors of De Ende might be condemned to pay the amount. This claim was also contested by the executors. There was no other evidence introduced in the trial of these petitions to support the claims of the petitioners, but a certified copj' of the decree rendered by the Chancery Court at Richmond, on the 16th of March, 1839, in favor of the petitioners against Womack, the ancillary legal representatives of De Ende in Virginia.
The proprietj' of receiving the copy of this decree in evidence to establish the claims of the petitioners, was earnestly contested in Rouisiana. The Court of Probates, being of opinion that it was not proper, rejected it; but, on appeal, that decision was reversed, and the copy of the decree was held to be proper and sufficient evidence to prove the demand of the petitioners, and, in accordance with this opinion, judgments were rendered on this evidence, and this evidence alone, in favor of the petitioners for. the precise sums, with interest, which had been decreed by the Richmond Chancery Court against Wo-mack, to be paid in due course of administration. In the arg-ument here, the appellant’s counsel have renewed the objections made in the Rouisiana courts to receiving the copy of this decree, and have contended that it was not proper evidence in support of the petitions and should have been rejected, as had been decided by the ’* Court of Probates. If this question could be considered, or, to speak more properly, could be reconsidered on the present occasion, it would be worthy of grave consideration, and on which there would probably be some diversity of opinion amongst the judges present. But, we consider the question as to this suit res ju-dicata ; whether rightly decided or not we can’t enquire. It was within the province and jurisdiction of the Rouisiana Court of Appeals to decide the question. That court did decide it, and judgments on the petitions were rendered accordingly. These judgments were binding and conclusive in Rouisiana between the parties and privies, and have equal force here as in Rouisiana, (Constitution of United States, art. 4, sec. 1; Dunlop’s Laws of United States, page 8,) and are to have the same effect here as judgments of our own courts. Clarke’s adm’r v. Day, 2 Leigh, 172. These judgments must be held by us to be binding upon the appellees and the executors of De Ende as parties, and on the legatees as privies in estate.
But it was said in the argument, that the legatees of a Rouisiana testator, as instituted heirs, have a right to take possession of the succession and become thereby liable to pay all the debts of the succession, although they may not have received assets sufficient for the purpose, unless they protect themselves from that liability by having an inventory taken of the estate as prescribed by law, in which case their liability for the payment of the debts would not exceed the value of the property. The heir occupying this position, I presume, would not be bound by a judgment subsequently rendered against the executor. I presume he would be no more bound by such a judgment than an heir-at-law in Virginia would be bound by a judgment against the administrator of the decedent. Neither the heir-at-law in the one case, nor the instituted heir in the other, could be regarded as privies in estate to the judgment. But the legatees of De Ende did not take possession of the succession, and ^thereby incur the responsibility of paying the debts of the testator. On the contrary, they claimed under the executors, and what they did receive passed through the hands of the executors. The *880 appellees presented their petitions against the executors, recovered the judgments against them and prosecuted their claim against them, until their accounts were finally settled and confirmed, and the balance in the hands of the surviving executor paid over to them under a special order of the court, made after the judgments were rendered, and the executor was finally and forever discharged from all further trust and liability by the orders of the 16th and 20th of August, 1847.. Tait and Wilkinson had then received of the executors, in part satisfaction of their judgments, a small fraction over $14,000, which left a considerable sum remaining unpaid on each judgment. The appellees then, for the first time, began, as they had a right to do, to look to the legatees, and to call on them to make contribution for the satisfaction of these unpaid balances. Accordingly, the appellee Nathaniel B. Hill, administrator of James P. Wilkinson, deceased, and the ap-pellee Bacon Tait instituted three several suits in the Circuit Superior Court of Taw and Chancery for the county of Cumberland, against Caroline, Louisa and Eliza De Ende, to recover the balances due on the judgments. They filed with their bills, as exhibits, copies of the the decree in the Richmond Chancery suit, also copies of the mortuary proceedings in the Court of Probates of New Orleans, relative to the succession of De Ende, including the petitions of Tait and Wilkinson and the judgments thereon. The defendants demurred to the bills for the want of proper parties. These demurrers were overruled. The bills were taken for confessed as to Louisa De Ende, who failed to answer. Caroline and Eliza De Ende filed their answers, contending that the proceedings and decree in the Richmond Chancery Court against Womack, as administrator of De Ende, were irregular,' fraudulent *and void; that the proceedings and decrees in the Court of Probates, by Tait and Wilkinson against the executors of De Ende, were void and in no wise binding on them. That if bound at all, they were bound to contribute their ratable proportions only of what had been received of De Ende’s estate, taking into the account what had been received by the other legatees of the testator. They also insisted upon the benefit of the statute of limitations, not specifying what statute of limitations has any bearing on these causes.
The causes were heard on the 1st of April, 18S0, when an order was made directing a commissioner of the court to take an account of all payments that had been made, shewing the balance due on each judgment. In executing this order the commissioner was directed to bring the interest calculations up to the 22d of August, 1850. In rendering this decree the court professed not to decide any of the questions of law presented by the pleadings. But as they were never after-wards referred to or passed upon by the court, the effect of the order of account was to overrule the objections taken to the proceedings had in the Richmond Chancery suit, to the record and proceedings in the Court of Probates in New Orleans, to the defence arising on the statute of limitations, and to the grounds taken by the defendants that they could not, under any circumstances, be held bound to contribute more than their ratable proportion of what they had received, taking into the account what had been received by the other legatees.
As to the decree in the Richmond chancery suit, although it was referred to in the bill, and made an exhibit, it constituted no essential part of the plaintiffs’ case. Their claims were predicated on the judgments of the Louisiana Probate Court, which established the debts of the appellees, and fixed their lien on the Louisiana assets in the hands of the executors and those claiming under those executors. The reference made by the plaintiffs to the proceedings in the Richmond Chancery *Court was irrelevant, and the filing of a copy of the decree should be regarded as surplusage, and was, therefore, properly disregarded by the court. The record of the mortuary proceedings in the Court of Probates in New Orleans, embracing the settlement of the accounts of the executors and the petitions and judgments of the appellees, constitute the foundation of the plaintiffs’ claims, and furnished the evidence of their right of recourse and recovery against the legatees. It was, therefore, indispensably necessary that they should be referred to and relied on in the bills, and that copies thereof should be filed as exhibits with the bills. The proceedings against the executors terminated on the 11th of June, 1847, when all the assets in the hands of the surviving executor were exhausted, and the liability of the executor determined. The right then accrued to the appellees to proceed against the legatees for contribution. They brought their suits against the appellants within one year five months and fifteen days from this date. If the Virginia statute of limitations applies to these cases, the suits were brought in good time — the limitations here being five years. If the Louisiana Code applies, the limitation would be ten years, because the plaintiffs claim under judgments, (C. C. art. 3511,) so that, whether the one or the other, or neither, is to be regarded as having any bearing upon these cases, the suits were brought in due time. In reference to the rate of contribution more will be said hereafter.
The commissioner executed the order of account, and made his report. In compliance with his interpretation of the order of account, he made a statement, shewing the balance due the plaintiffs. In this statement, he estimated interest on the judgments up to the 22d August, 1850, and added the interest to the principal, and thus ascertained the original amount of the demand; he then calculated interest on the payments from the date of the payment to the 22d August, 1850, added the interest to the amount of payments, and *881 *thus ascertained the amount of the ' credits ; he then subtracted the result I from the amount due on the judgments, in- j eluding interest, as above-mentioned, and ¡ reported the difference between the two sums as the balance due on the judgments. The commissioner no doubt thought all this time that this mode of applying credits and calculating interest, was in conflict with the established rule in Virginia, and, therefore, as may be inferred, made an alternate calculation and report, in conformity with the Virginia rule, which resulted in giving to the appellees the additional sum of $3,072 42. The court, however, adopted the first statement, which was palpably wrong, whether the payments were to be applied according to the Louisiana rule, (C. C. art. 2160,) or the Virginia rule. Lightfoot v. Price, 4 H. & M. 431. This was an error in the decree to the prejudice of the appellees; but there is on the face of the decree a manifest error to the prejudice of the appellants.
The appellants having received their shares of De Ende’s estate, under the laws of Louisiana, their right to hold and enjoy the property, and their liability to make contribution for the payment of debts, must be regulated and controlled by the same laws. By those laws, De Ende’s legatees, who had received his estate, after the assets in the hands of the executors became exhausted, leaving balances due on the judgment of the appellees, became bound to make contribution for the payment of those balances, in proportion to the part which each had received of the testator’s estate. C. C. art. 1369, 1373, 1376. But they were not bound in solido, and one for the other. C. C. art. 1374. It is declared, that “the creditors of the succession must divide amongst themselves the personal action which they have against them, and cannot sue one for the portion of the other, or one for the whole debt.” C. C. art. 1376.
“If the succession is divided by roots, the subdivision of debts takes place amongst the representatives *of each root, in the same manner as where there are several heirs.”
“If, then, the deceased leaves for heirs two children and four grandchildren, the issue of another child, each of the two children is bound only for one-third of the debt, and each of the grandchildren for one-twelfth.” C. C. art. 1377.
The same rule applies as to the entering of judgments on joint obligations, in which it is necessary that ail the obligors should be sued in the same joint action, (C. C. art. 2080,) and judgment will be entered for each one’s proportional part of the obligation; (C. C. art. 2081;) but if it should turn out that one of the joint obligors has paid his part of the obligation, the judgment to that extent will be entered in his favor. C. C. art. 2082.
In the cases now under consideration, these principles have been violated, and the decrees rendered against the defendants in solido. Eor this error, if there were none other in the record, the decrees should be reversed. But what is to be thought of the opinion of the court in overruling the demurrer to the bill for the want of proper parties?
By the laws of Louisiana, all the heirs, universal legatees, and legatees by universal title, who may have received portions of a dead man’s estate, are liable to make contribution to creditors whose debts remain unpaid, in proportion to what they have received, (C. C. art. 1369-1373 and 1606,) and when new creditors present themselves after the estate has been distributed, then, in addition to heirs, universal legatees, and legatees by universal title, the particular legatees, (C. C. art. 1060,) and even creditors also who have been paid, (C. C. art. 1061,) may be made to contribute towards the payment of these newly presented debts, if they are presented within three years after the judgment under which the debts were theretofore paid, or distribution was made. C. C. art. 1061. This limitation of three years would probably not apply to judgment *creditors — the prescription as to judgment creditors being ten years. C. C. art. 3511, and act of 30th April, 1853, No. 274.
When the natural father dies without leaving legitimate children, or descendants, his acknowledged natural children are entitled to receive by donation inter vivos, or mortis causa, one-fourth of his property only, if he leaves legitimate brothers or sisters, as in De Ende’s case. C. C. art. 1473. •Where a man lives in open concubinage with a free woman, he may make her a donation inter vivos or mortis causa, in moveables, not exceeding one-tenth part of his whole estate. C. C. art. 1473. But where he leaves legitimate brothers and sisters, as De Ende did, and makes this provision for the concubine and the children, he is bound to leave at least three-fourths of his estate to his legitimate relations, or to some one or more of them. C. C. art. 1474.
De Ende gave by will one-fourth of his estate to his six acknowledged illegitim ate. children, and to his concubine one-tenth. As he left one legitimate brother and three legitimate sisters, the portions given to his concubine and illegitimate children exceeded the disposable quantum of his estate, which he had authority to give them, by one-tenth part of the estate. These dispositions, I presume, were not, therefore, void in toto; nor was the gift to the concubine void in toto, under the Civil Code, art. 1474. They may be controlled by other articles of the Code. By article 1489 it is provided that the dispositions of property exceeding the disposable quantum will not be void, but are to be reduced — and this' reduction is to be made pró rata. C. C. art. 1498. If this proposition be correct, of which I entertain much doubt, the legacies to the concubine and her six children must be reduced pro rata to an amount equal to one-fourth part, and no more, of the testator’s estate that may remain after first deducting from the value of *882 the whole estate the debts and expenses of administration. Then, according' to the ^amount of the legacy to each legatee, when so reduced, they would be liable to make contribution in proportion to so much thereof as they may have received. The testator devised the residue of his estate, which; as a matter of course, was three-fourths thereof, to his said brother Francis De Ende, and his three sisters be-? fore mentioned, who were, as we must suppose, his nearest legitimate relations. They, of course, are each liable to contribute one-fourth of three-fourths of what they were entitled to receive under the will, if they received so much, or so much thereof as may be necessary for paying off their ratable proportions of the balances due on the appellees’ judgment.
How much all these different legatees are bound to contribute, cannot be ascertained until the surviving legatees and the representatives of such as may have died are made parties to the suits and brought before the court. Then all necessary and proper accounts may be taken, and when taken, it may appear, for aught that we know, that each legatee has received his full share of the estate, or it may turn out that the appellants have received a part, or the whole, or some part of the legacies that belonged to some other legatees, and remain their debtor for the amount so received. In such a case they could be held responsible to the appel-lees for the amount of that indebtedness to the other legatees and would have to contribute accordingly.It was therefore incumbent on the- plaibtiffs to have madb all the legatees or their legal representatives, parties to the suits. This not having been done, the court below, consequently, erred in overruling the demurrers to the bills. This is another good reason for reversing the decrees. The decrees must therefore be reversed with costs, and the cause remanded for further proceedings, according to the decree which has been prepared for the purpose.
The other judges concurred in the opinion of FIELD, P. The decree was as follows :
^DECREE.
This’ day came the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion that the said decrees are erroneous, because the court rendered decrees in solido against the appellants, and because it was erroneous to adopt as the basis of the decrees statements XX and YY, referred to in the commissioner’s report, in which the appellees were charged with inter-ést on the several payments made in part satisfaction of their judgments, from the date of the payment until the 22d day of August, 1850, and because the court overruled the demurrers to the bills. Therefore, it is decreed and ordered that the said decrees be reversed and annulled, and that the appellee Hill, who is an administrator, out of the estate of his intestate in his hands to be administered, and the other appellee, in his own right, do pay unto the appellants their costs by them expended in the prosecution of their appeal aforesaid here ; and it is ordered that this cause be remanded to the Circuit Court of Cumberland county, with directions to that court to give leave to the appellees to file an amended bill making the legal representatives of Francis De Ende deceased, of Victorie Cavalier deceased, the surviving illegitimate acknowledged children of Henry De Ende deceased, and the legal representatives of such of them as may be dead, parties defendants in the suits. And if the said amended bills shall be filed, and when the causes shall be properly matured for trial, the said court is to proceed to hear and decide the causes according to the rights of the parties. But if the appellees shall fail or refuse to file said amended bills, then the court is directed to sustain the demurrers, and dismiss the bills with costs.