# CHARLESTON.

LISKEY *et als. v.* SNYDER *et als.*

Submitted April 1, 1909.   Decided November 2, 1909.

1. MORTGAGES—*Occupation of Premises by Mortgagee—Rent.*

   A general rule applicable as between mortgagor and mortgagee, is, that if the mortgagee himself occupies the premises, especially if they consist of a farm under cultivation, upon which labor and money must be bestowed to produce annual crops, he will be charged with such sums as will be a fair rent for the premises, without regard to what he may realize as profits from the use of them.   (p. 152).

2. LANDLORD AND TENANT—*Rental Value of Land—Measure of.*

   The true annual rental value of land is not the value of all the farm products which can possibly be realized from its use, when the land is stocked, farmed and managed with the greatest skill and industry, but it is the price which a prudent and industrious farmer can afford to pay for its use, after taking into consideration the probable amount and the market value of his crops, and the probable injuries thereto resulting from the ordinary changes of climate and seasons.   (p. 153).

3. EVIDENCE—*Rental Value of Land—Opinion Evidence—Weight.*

   In arriving at the true annual value of land opinion evidence evincing exaggerated and speculative notions thereof should not be allowed to overcome the evidence of actual renting of the same land and of land of like character in the same vicinity, especially when corroborated by evidence showing the amount, character, condition and location of the land. (p. 153).

4. MORTGAGES—*Protection of Property by Mortgagee—Reimbursement.*

   A mortagee in possession has the right to protect the property, and to be reimbursed his expenses in so doing.   (p. 157).

5. SAME—*Redemption—Allowance for Repairs and Improvements.*

   Where reasonable repairs and permanent improvements have

been made in good faith, by one standing upon the legal foot-ing of a mortagee in possession, but who supposes himself to have acquired the absolute title, the value of them will be al-lowed upon the subsequent redemption of the land. (p. 161).

6.  INTEREST—*Partial Payments.*

Where payments are made from time to time on a debt bear-ing interest, the interest should be computed on the debt up to the time of payment, and the payment deducted from the aggre-gate of principal and interest and the balance form a new capital, but which must not be more than the former. If the payment be less than the interest due at the time the sur-plus of interest must not go to augment the capital; and it is error for a commissioner in stating an account to allow interest on payments to a future day when the debt is paid or settle-ment made, and then deduct the payment and interest from the debt, principal and interest.  (p. 163).

7.  SAME—*Judgments.*

Where a decree is rendered for payment of money it should, as required by section 3988, Code 1906, be for the aggregate of principal and interest due at the date of the decree, with in-terest from that date; and it is error to give interest upon the aggregate of principal and interest anterior to the date of the decree.  (p. 163).

Appeal from Circuit Court, Randolph County.

Bill by Robert Liskey and others against Sampson Snyder and others.  From the decree, complainants appeal.

*Affirmed in part.  Reversed in part.*

*Talbott & Hoover, Fred O. Blue,* and *Sipe & Harris,* for ap-pellants.

*C. H. Scott, L. Hansford,* and *Mollohan, McClintic & Math-ews,* for appellees.

MILLER, PRESIDENT:

This Court on a former appeal, 56 W. Va. 610, adjudged that the matters in controversy should be finally settled on the principles applicable to mortgagor and mortgagee, and conclud-ed that while the facts proven showed Snyder, mortgagor, en-titled to redeem the land from Liskey and others, as mortgagees thereof, his answer and cross bill was defective as a bill to re-deem, in that it did not unqualifiedly express and offer to pay the mortgagees whatever might be found due them on the mortgage debt.  Accordingly, the decree below was reversed and

the cause remanded with leave to Snyder to amend his answer in this particular.

From the final decree below pronounced on the original papers and proceedings, on the amended answer and cross bill of Snyder, motion to dismiss the same, and demurrer thereto of appellants, overruled, and upon their answer with general replication thereto, and upon the report of the commissioner to whom the cause was referred, and sundry exceptions of appellants and appellee thereto, overruled, Liskey and others have appealed.

The decree appealed from, in accordance with the report of the commissioner, approved and confirmed, adjudged defendant Snyder indebted to appellants in the sum of $7,839.59, and which they had right to recover from Snyder, with interest from February 18, 1908, until paid, and the cost of this suit, except the costs in this Court recovered against them by the said Snyder upon the former appeal, and that the same constituted a lien upon the land in controversy; and further that said sum should be paid appellants out of the $19,800.00 in the hands of the general receiver of the court, arising from the sale of timber taken from the land, the balance thereof, after paying certain other costs and expenses decreed, to be paid to the said Snyder.

The motion of appellants to dismiss the amended answer and cross bill, for want of proper process, and their demurrer thereto, for matter therein not germane nor proper matter of amendment, somewhat elaborately argued by counsel, we think without substantial merit and were properly overruled. Although after the decision on the former appeal and the recordation of the mandate below, the appellee Snyder promptly filed his amended answer and cross bill and had the cause referred to a commissioner, the appellants were not prejudiced thereby. The cause appears to have been fully heard upon their answer to said cross bill, and upon depositions and proofs taken, and the amended answer and cross bill, we think, substantially cures the defect in the original, pointed out in the opinion on the former hearing, and, moreover, it is practically conceded by counsel for appellants that the questions presented upon the several exceptions to the commissioner's report raise the only material and meritorious questions for consideration. Several of these exceptions have been abandoned on this hearing.

The first exception of appellants relates to the item $9,895.80,

rent for the land from May 27, 1901 to May 2, 1905; 3 years, 11 months and 15 days, at the rate of $2,500.00 per year, and the interest thereon to May 2. 1905, amounting to $881.25, the time intended to be covered by the commissioner being from the date appellants are shown to have obtained possesion of the land under the original decree, reversed by this Court, to May 2, 1905, the date of the return of the sheriff on a writ of possession subsequently awarded by the circuit court. Appellants claim, however, that they should not be charged with rent after Dec. 24, 1904, when as they contend the record shows actual possession of the land was recovered by Snyder. We discover in this connection what appears to us a mistake of the commissioner in calculation. The time from May 27, 1901 to May 2, 1905, would be 3 years, 11 months and *5 days,* not *15 days,* as found by the commissioner, and at the rate per year allowed the rent for the actual time would amount to $9,826.35, instead of $9,895.80, a difference to the prejudice of appellants of $69.45, which should be corrected. Appellants concede they are chargeable in settlement with rent at a reasonable rate, but they contend that $2500.00 per year is in excess of the actual rental value of the land for the time they had it in possession, as shown by the weight and preponderance of the legal and proper evidence in the case. In disposing of this exception we must be guided by the rules of law applicable. While one of these is the rule of presumption in favor of the finding of the commissioner, especially when confirmed by the court below, there are other rules equally as potent. A general rule applicable as between mortgagor and mortgagee is that "if a mortgagee himself occupies the premises, especially if they consist of a farm under cultivation, upon which labor and money must be bestowed to produce annual crops, he will be charged with such sums as will be a fair rent of the premises, without regard to what he may realize as profits from the use of it." 2 Jones on Mortgages, sections 1122, 1123; and this Court, in *Bodkin* v. *Arnold,* 48 W. Va. 108, a suit for *mesne* profits, has held, point 1 of the syllabus, that where a defendant has had knowledge of plaintiff's title, although he honestly believes he has the superior legal title, the measure of damages is not the actual receipts, but the fair annual rental of the property, less taxes paid; and in point 6 of the same syllabus, it is laid down that, "The true measure of

damages is compensation for the actual loss sustained by the plaintiff in being deprived of the use of his property, and speculative profits, founded on an exaggerated notion of the real value of the property, are not recoverable;" and that, "Evidence tending to establish such speculative profits is inadmissible, as it may mislead the jury in arriving at the fair rental value of the property." Moreover, it was decided more than twenty years ago by this Court, "that the true annual rental value of land is not the value of all the farm products which can possibly be real- ized from its use, when the land is stocked, farmed and managed with the greatest skill and industry, but it is the price which a prudent and industrious farmer can afford to pay for its use, after taking into consideration the probable amount and the market value of his crops, and the probable injuries thereto re- sulting from the ordinary changes of climate and season." *Moore* v. *Ligon,* 30 W. Va. 146, point 4 of the syllabus. Measured by these rules, is the report of the commissioner, and the decree be- low supported by the evidence? We have carefully examined the evidence, and we do not think it is. While opinion evidence on rental value is sometimes the best and only evidence that can be obtained, and must be given its proper weight, this class of ev- idence is not very reliable, and in this case is, we think, entitled to very little consideration. The evidence of Snyder particu- larly, and of some of his witnesses evinces a disposition to greatly exaggerate the real value, and is not corroborated by any facts or circumstances justifying their opinion. Opposed is the evi- dence of the actual renting of these lands by Snyder himself at $1200.00 per year; the renting of a much larger tract in the same vicinity at a greatly less rate, considering the acreage. These pertinent facts taken in connection with the evidence showing the character and condition of the land and buildings thereon, to which we cannot shut our eyes, convince us, beyond any doubt, that the land had no such actual rental value as was found, and that no "prudent and industrious farmer" could have been found who would or could have afforded to take the land and paid the rent allowed by the commissioner. We are forced to the conclusion, after careful consideration of all the evidence, that $1500.00 is the highest annual value which can be sustained by it, and that the commissioner's report and de- cree below should be corrected accordingly.

Appellants' next exception relates to the disallowance of the bonus of $3,000.00, covered by the purchase money notes and contract of Snyder. The commissioner reports difficulty in coming to a conclusion about this item.  In the former opinion it is said that, "prior to January 23, 1899, Snyder was the legal and equitable owner of the land, subject to indebtedness to various persons amounting to over $16,000.00.  On that day he became the the debtor by express contract of the plaintiffs in the sum of over $19,000.00, and continued to hold the equitable title to the land while the plaintiffs held the legal title for their security.  He was their debtor bound by an express contract to pay them the money and take the land.  The relation of debtor and creditor existed between him and them.  This is one of the strongest indications of a mortgage."  And, "by way of guidance in the further proceedings," it was further said, "that, upon strict and full proof, such as to preclude the existence of any shift or device to evade the statute against usury, the plaintiffs may be allowed any just and reasonable expenses incurred by them in making their loan, and not already paid by the defendant."  Our former decision was based upon the theory, not that the appellants had purchased the land at one price and had then agreed to convey it to the appellee at an advanced price, upon condition; but that they had purchased the property for his benefit, upon an agreement to convey it to him upon the subsequent re-payment to them of the amount paid, and according to the principles laid down in the numerous authorities cited, rendering the status of the parties substantially that of mortgagor and mortgagee.  Are the appellants, then upon the rules and principles applicable as between mortgagor and mortgagee, entitled to this bonus money?  Their counsel say they have spent much time considering this subject. and have approached it with a great deal of hesitation, but that if rightly interpreted it was the intention of the court in its former opinion to give appellee relief upon the terms of the agreement of January, 1899, then appellants would be entitled to the $3,000.00 and its interest; but if upon the other hand it was intended to treat the whole transaction as a mortgage and nothing more, they frankly admit the $3,000.00 can not be collected, unless it can be concluded that the appellee agreed to pay appellants this sum as a reasonable compensation for the

risks assumed, the time and attention personally given, and money laid out by them in the way of expenses. Counsel, however, are inclined they say to believe the court gave appellee relief on the former hearing on the sole ground of the relation of mortgagor and mortgagee, and that if the appellants are entitled to the $3,000.00 it must be by way of compensation for the risk assumed, the personal attention given to the matters involved and the expenses incurred therein. The latter, we think, the correct interpretation of our former decision. May this sum then, or any part of it, be recovered by appellants? The record shows that Snyder, appellee, in January, 1899, paid appellants, on account of expenses, attorneys' fees, etc., incurred in making their loan, about $475. Counsel conclude therefore that this sum should be deducted from the $3,000.00 which appellee agreed to pay appellants. But does not the $475.00 cover all expenses incurred in making the loan, and can appellants be allowed the residue upon any theory which would preclude the existence of a shift or device to evade the statute against usury? To say that they can, it seems to us, would be to open wide the door for usurious transactions, and dangerous in the extreme. There are facts and circumstances disclosed in the record, and alluded to in the briefs of counsel, which appear to call for a liberal construction of the rules respecting usury, for it is quite clear that but for this bonus appellants would never have become involved in this transaction with Snyder. But this consideration can furnish us no reasonable or proper excuse for evasion of the law against usury, and our conclusion is that the findings of the commissioner as to this item, and the judgment of the court thereon, should be sustained.

We will consider the appellants' third and fourth exception together with appellee's exception number one to the commissioner's report, as was done by counsel on both sides. Appellants' exceptions are in effect, that the commissioner failed to allow them the sum of $12,000.00, the difference between the price at which certain timber on the land was sold by them to Taylor and Fenderson, approved by Snyder, and the sum subsequently realized from the sale thereof to other parties. The basis of this claim is that in a suit for specific execution of their contract, brought by Taylor and Fenderson against appellants in the Federal court, they defeated the plaintiffs, though

aided therein by Snyder, and thereby enabled Snyder to realize in a subsequent sale thereof to others the difference between $8,000.00, which would have been realized from Taylor and Fenderson, and $20,000, realized from the subsequent sale thereof. We know of no legal or equitable principles on which this claim of appellants can be predicated. They have filed no account and set up no claim for compensation for services rendered in the defense of said suit, and have offered no proof thereof. Their theory seems to be that but for their defense Snyder would have lost this difference, and therefore they and not Snyder are entitled thereto; and, it is said by way of argument that these services in that suit also furnish strong evidence to establish appellants' claim to the $3,000.00 bonus money. But their services in the defense of that suit were not contemplated, and could not have been contracted for, at the time of the contract for the $3,000.00 bonus. If they had filed a claim for those services, and shown by the evidence the nature, character and extent thereof, and what they were reasonably worth, we are not prepared to say that a proper allowance should not have been made them out of the proceeds of the sale of the timber. But such a case is not presented. We could not say from the record, if called upon, what appellants' services were worth, if anything. The commissioner did allow them $1148.89, costs and expenses paid and incurred in defending the Taylor and Fenderson suit, with interest, amounting to $1355.69; and this allowance is the subject of the appellees' first exception. And it is urgently insisted by counsel for Snyder that this allowance was improper; that the timber sold Taylor and Fenderson, in January, 1901, did not include all the timber sold to other parties some six years afterwards; that if at the time of the first sale he could have realized and paid appellants on their indebtedness the $8,000.00, and thereby saved the loss of interest, damages to the property, and loss of time and expense incurred in litigating, he would have been as well or better off than he now is with the proceeds of the last sale. But we cannot take this extreme view of the appellee and his counsel. While Snyder was out of possession of his lands for a number of years, yet appellants have been charged in settlement with the rental value thereof, with interest, and have been charged with waste and other items, with interest thereon.

The appellants' defense of the suit of Taylor and Fenderson enured to the benefit of the appellee, they represented him, against his will perhaps, but it seems to us he should not be permitted to take the fruits of their efforts without bearing the actual cost thereof.      Besides, appellants were mortgagees in possession; they had a lien upon the property with a right to protect it, and to be reimbursed their expenses in doing so. 2 Jones on Mortgages, sections 1132-1138.      We are of opinion therefore that the commissioner rightly allowed the appellants the disbursement of $1148.89.

Appellants' fifth, sixth and seventh exceptions, relate to the charge of $1,868.76, for cattle, and $500.00 for keeping same for one year, claimed by Snyder to have been sold appellants by lease contract of October 6, 1899, the date of the contract between him and them providing for the re-purchase of his lands, and whereby appellants purport to have leased said lands to Snyder for twelve months, upon the terms of $600.00 for the balance of the preceding year, and $1200 for the rent of the year expiring October 5, 1900.      In this contract appellants acknowledge receipt in full of the above amounts, viz., $600.00, and $1,200, and of $67.76, an open expense account, in the purchase of three several lots of cattle, then on the land, and which cattle Snyder and wife thereby obligated themselves to keep on the premises free of charge, and to give the leased land proper care and attention, and to pay certain back taxes, and the taxes for the year 1899; appellants to be charged therewith on October 5, 1900, and to reimburse Snyder and wife therefor.  And among other things it was further stipulated that if Snyder and wife should take good care of the leased premises, as agreed, they might on October 5, 1900, by the repayment of the $1,868.76, re-purchase said cattle.  Appellants claim that they never in fact got possession of these cattle from Snyder and wife, but that they remained in their possession on the land, and were redeemed or re-purchased by them in October, 1900, pursuant to the contract, and that the commissioner has erroneously charged them not only with the full amount of said receipts, with interest, already covered by their two receipts to Snyder, one of October 1, 1900, for $708.78, and the other of October 20, 1900, for $1990.26, but also with $500.00 for keeping the cattle, with interest thereon.  The evidence satisfies us beyond all doubt

that this exception is well founded in fact. While the appellee in a vague sort of way says the appellants got the cattle, yet he gives no time, place or circumstance of their delivery. His contract provided that he should keep the cattle on the land, at his own expense, with right of redemption, and appellants positively deny having ever received them. On the contrary, they claim that Snyder, in October 1900, availed himself of the option given in the contract to repurchase them. Besides these terms of the. contract there are numerous uncontroverted facts in evidence, all of which satisfy us of the correctness of appellants' position. The facts are these: Snyder's account against appellants, referred to in his original answer, and sworn to and filed with his original deposition, by items, aggregated only $2,861.57, and includes no such items; and in his deposition Snyder says he believes it to be a just and true account. Snyder pleads this same account by items in his amended answer and cross bill, making no mention therein of the two items excepted to, and it is hardly probable that he could have omitted in both these pleadings so important items as these. In his testimony, originally taken in the cause, Snyder was particularly asked to state the amount of payments made by him on his indebtedness to appellants. His answer was that he had paid them something over $300.00, in January, 1899, for their attorney fee, expenses, etc., and in addition, that he had paid them at different times amounts aggregating $2,861.57, as shown by his itemized statement filed, the statement just referred to. But we have still stronger evidence. The receipt which appellants gave Snyder, October 1, 1900, for $708.78, covering pasture of cattle, and the delivery of eleven cattle, aggregating the amount of the receipt, specifically stipulated that, "It is the purpose and intent of all parties hereto that the above credits are to be applied toward redeeeming the cattle as mentioned in the contract of rental dated October 6, 1899 * * * * * and this receipt is to be used in connection with said contract." While the receipt of October 20, 1900, for $1,990.26, is not so specific as the first as to the redemption of the cattle, yet it acknowledges the receipt of 68 cattle, and one horse, at the price of $1,990.26, and stipulates that this amount "is to be credited on the rental as per contract entered into October 6, 1899, * * * * and the residue applied as a credit on the. rent as per

contract entered into this 20th day of October, 1900." As we understand the contract of October 6, 1899, $600.00 of the amount receipted for was for a balance on rent for the previous year, and $1,200.00 thereof for rent for the year expiring October 5, 1900. So that by the terms of this contract the rental therein provided for was fully paid. If then the $1,990.26, receipted for October 20, 1900, was also to be credited on the rental as per that contract of October 6, 1899, would not this amount to a double payment of that rent? W. H. Rickard in his testimony positively states that the defendants did not get the cattle covered by the receipt of October 5, 1899, that these cattle were redeemed or repurchased through the purchase of other cattle, the keeping of cattle, &c. Snyder in his testimony nowhere undertakes in terms to contradict this evidence of Rickard. These facts and circumstances in our view prove beyond question that appellants never got the cattle referred to in the receipt of October 6, 1899, and that those cattle, which by the terms of that paper were to remain in the possession of Snyder, did remain with him, and never were delivered to appellants, but were in fact redeemed by the substitution of pasturing accounts, and other cattle delivered, and covered by the two receipts of October 5th and 20th, 1900, and that the commissioner and the court below erred in charging appellants with the two items covered by said exceptions.

Appellants' eighth exception covers the charge by the commissioner against appellants of $148.93. This charge is the aggregate of some eight small items in Snyder's account. Counsel are impressed that this charge may include the expense account of $67.60, referred to in the contract of October 6, 1899, but we are unable from the record to identify any of these items with any of the items in that expense account. Counsel say it was the duty of the commissioner to have stated the items of this charge, and not having done so the charge should have been rejected: But we think this position untenable, as the items are covered by the account, pleaded in the answer, and are aggregated in the report of the commissioner. True no proof of the specific items was offered by Snyder. He has apparently relied on his original testimony, and upon the allegations in his amended answer and cross bill, and his counsel says in his brief that these items have been in the case, sworn to, proven and

never denied since Snyder's first deposition was taken, April 25, 1901. We find counsel to be in error, however; for the appellants in their answer to the amended answer and cross bill specifically deny the correctness of this account, and demand and call for strict proof thereof, and appellant Rickard, in his testimony in the original cause relating to the items in the account of $2,861.57, says he finds that this amount has been paid as evidenced by said receipts referred to; the receipts of October 1st and 20th, 1900, except the charge for pasturing 78 cattle, $23.28, and 5 calves, $0.65; as to both of which items he says they are in ignorance; that they are not dated, and he has no means of knowing what is meant by them. These are the first two items covered by the charge excepted to; and as to two other items thereof for boarding men and horses, $12 and $15 respectively, this witness says they are charges for boarding us and our horses when we were after our cattle which Snyder was grazing, and for which he absolutely at the time refused to receive any pay, but that on both occasions they handed Mrs. Snyder an amount of money which she did not want to receive, and which she said was too much; that as to the grain fed cattle in 1900, he thought that had been paid. Three other items charged in the account as of November 20, 1900, aggregating $50.00, are for feeding a horse, and this witness says, he thinks the charge extreme, but supposes defendants are liable for it, as they had no contract as to what the charge should be. Another item, without date, except as to the year, is to eight bushels grain fed cattle in 1899-1900, $48.00. This would be at the price of $6.00 per bushel, which is incredible. Outside of the three items aggregating $50.00 for keeping the horse we do not think there is any appreciable evidence to support the charge of $148.93, and that appellants' exception thereto to the extent of the items not proven should have been sustained.

Appellants rely upon only three other exceptions to the commissioner's report, the ninth, tenth and eleventh: The ninth is that the commissioner erroneously charged them with rent from December 24, 1904 to May 2, 1905, when, as they claim, possession of the land was surrendered to Snyder on December 24, 1904. The evidence does not satisfy us that this exception is well founded. The return on the writ of possession shows that Snyder was put in possession of the land on May 2, 1905.

The tenth exception relates to the charge of $1048.00 for sawed lumber alleged to have been taken off the lands by appellants. We have examined the evidence on this question, and we cannot say from it that the finding of the commissioner is erroneous. The eleventh exception relates to the charge of $450.00, for waste committed by the appellants while in possession of the land. We have carefully read and considered the evidence on this subject. The appellee claimed a very much larger sum, and there was evidence tending to support his claim, and we are unable to say from all the evidence that the commissioner erred in his finding.

Having already disposed of appellee's first exception and cross assignment of error, the second and third, the only others relied on, remain for consideration. The second relates to the credit given appellants for $1,000.00, for repairs and improvements while they had possession. The items are: for new fencing built, $500.00; for clearing 300 acres in brush, $1,050.00; hauling rock and repairing buildings and fences, $400.00. The commissioner allowed the lump sum of $1,000.00. Appellants' evidence shows over $1,100.00 paid out for clearing, part for cutting over old sod, but most of it for work done where there never had been any sod, and that $800.00 had been actually expended for labor and material in building new and repairing old fences. The commissioner did not allow the entire amount claimed, and we can not determine from his report how he arrived at the amount allowed; nor can we determine from the evidence what proportion of the expenditures went to pay for ordinary repairs and what for permanent repairs and improvements.

What law is applicable to the facts in this case? Where repairs are made by a mortgagee in possession under a regular mortgage the rule, as stated by one law writer, is that "he has no authority to make the estate better at the expense of the mortgagor, but is bound to use reasonable means to preserve the estate from loss or injury;" but that "he may properly, under some circumstances, go beyond this, and supply things that were wanting at the time of entry;  *   *   *   *   in order to put the estate in condition for occupation," the propriety and legality of all such expenditures depending always upon the particular circumstances of the case. With respect to improvements, a

like general rule is, that a "mortgagee will not be allowed for them further than is proper to keep the premises in necessary repair, * * * * unless made with the consent and approbation of the mortgagor." 2 Jones on Mort., sections 1126, 1127. These are general rules applicable to regular mortgages; but Jones and other writers recognize and define exceptions to the general rules. One of these, respecting permanent improvements is, that "when the mortgagee makes permanent improvements, supposing he has acquired an absolute title by foreclosure, upon subsequent redemption he is allowed the value of them, especially if the mortgagor has by his actions to any extent favored the mistaken belief." And with respect to permanent repairs, though not bound to make them, as he is sometimes bound to make temporary repairs to preserve the estate, the mortgagee may charge the cost of such improvments so far as they are necessary and beneficial to the estate, and will not be held to prove their absolute necessity, the value of such improvement to the property, rather than their cost, being the true basis of the allowance. 2 Jones on Mort., sections 1128, 1129. Another writer, Boone on Mort., section 170, says: "Where such improvements have been made in good faith, by a person standing upon the legal footing of a mortgagee in possession, but who supposed himself to have acquired the absolute title, the value of them will be allowed upon a subsequent redemption."

Is not the allowance by the commissioner justified by these rules? True the repairs and improvements were made pending this suit. But appellants had a contract on its face entitling them to the land, and a decree below in their favor. True they had notice of Snyder's claims; but there is some evidence tending to show that when Snyder was in possession of the land under a lease contract with appellants, he complained because they did not furnish him with money to make repairs and improvements of the same character. The cutting of brush and the clearing up of the land was, to some extent at least, reasonably necessary for the occupancy of the land by appellants for which they have been charged rent; and to preserve the property from deterioration; and the improvements actually added value to the land, for the evidence shows that some 300 acres were cleared and put in a state of cultivation at an actual expenditure of from $3.00 to $3.50 per acre. Our conclusion is

the allowance of the commissioner under the facts in this case was fully justified, and that appellee's exception should be overruled.

The third cross assignment of error which we think well founded, is not covered by any exception to the commissioner's report. It relates to the question of interest on the balance found against Snyder and the method of stating the account. In stating the account the commissioner allowed interest on the items on each side to May 2, 1905, and then computed interest on the balance then struck in favor of the appellants, to February 18, 1908, thus, as appellee claims, erroneously allowing interest on interest as well as on the principal sum from February 18, 1908, an error also carried into the decree appealed from. Sections 3986 and 3988, Code 1906, in modification of the common law rule, provide that in all cases where a judgment or decree is rendered or made for the payment of money it shall be for the aggregate of the principal and interest due at the date of the verdict, if there be one, otherwise at the date of the judgment or decree, with interest thereon from such date, and that every judgment or decree for the payment of money, except where it is otherwise provided by law, shall bear interest from the date thereof, whether so stated in the judgment or decree or not. And in Lamb v. Cecil, 25 W. Va. 288, it was held error to give interest upon the aggregate of principal and interest, anterior to the date of the decree, as it was done in this case. See also, Bank v. Good, 21 W. Va. 455. And in Virginia and in this State it has been held error for a commissioner to allow interest on part payments to a future day when the debt is paid or settlement made, and then credit the payment and interest upon the debt, principal and interest. De Ende v. Wilkinson, 2 Pat. & H. 663; Fultz v. Davis, 26 Grat. 903; Hurst v. Hite, 20 W. Va. 183. To the same effect is Tiernan v. Minghini, 28 W. Va. 314 and Dunbar's Ex'r v. Woodcock's Ex'r, 10 Leigh 628. The true rule, according to the authorities just cited is "that where payments are made from time to time on a debt bearing interest, the interest is to be computed on the debt up to the time of payment, and the payment is to be deducted from the amount, principal and interest, and the balance forms a new capital; on that balance interest is to be computed from that time, but the new capital must not be more than the former. If the pay-

ment be less than the interest due at the time, the surplus of interest must not augment the capital." As the report of the commissioner and the decree of the court thereon in our opinion offended against this rule they should be corrected accordingly.

To the extent of the errors therein, as aforesaid, we are of opinion to reverse the decree below, but in all other respects to affirm the same, and it will be so ordered. And the cause having been fully heard below upon pleadings and proofs it will be remanded to the circuit court for the sole and only purpose of having the account between the parties reformed and restated in accordance with the rules and principles enunciated, and directions given herein, and to decree accordingly.

*Affirmed in part. Reversed in part.*