# CHARLESTON.

## COPELAN v. SOHN *et al.*

Submitted February 6, 1917.   Decided February 13, 1917.

1. MORTGAGES—*Subrogation—Sale by Trustee—Rights of Purchaser—Rental Value—Repairs—Payment of Trust Debt.*

   A bona fide purchaser of land from a trustee in a deed of trust, given by the owner to secure a creditor, who obtains possession, improves the property, pays the taxes thereon and a part of the trust debt, and thereafter loses the land at the suit of the owner, is chargeable with the fair rental value of the land during the time of his possession, and is entitled to reimbursement out of the rents for necessary repairs for the preservation of the property and taxes paid, and to be subrogated to the rights of the trust creditor to the extent his purchase money has been applied on the trust debt.   (p. 598).

2. SAME—*Sale by Trustee—Rights of Purchaser—Insurance.*

   In such case, where the owner has obligated himself to keep the property insured against loss by fire for the creditor's protection, and, in his deed to the purchaser, the trustee has likewise required the same thing of the purchaser, and the purchaser has complied with such requirement, and the owner has not, the purchaser is entitled to be reimbursed the cost of such amount of insurance as it was the duty of the owner to carry on the property.   (p. 599).

Appeal from Circuit Court, Mingo County.

Suit by M. Copelan against Eli Sohn and others. Decree for plaintiff, and defendant Eli Sohn appeals.

*Modified and affirmed.*

*Goodykoontz & Scherr, S. D. Stokes* and *Wade H. Bronson,* for appellant.

*Wiles & Bias,* for appellee.

Williams, Judge:

M. Copelan executed a deed of trust to J. C. Wysor, trustee, conveying his house and lot in the City of Williamson, to secure a debt of $4,000, which he owed M. Eisenman. By the terms of the deed a sale was not to be made for five years, unless the grantor failed to apply the rents derived from the property, after thirty months from the date of the deed, as payments on the debt secured, and in the event of his failure to so apply the rent the entire debt was to become due immediately, and the trustee was authorized to sell the property upon the request of the *cestui qui trust.* Copelan also agreed to keep the property insured against loss by fire for the protection of Eisenman. The property was sold by the trustee and purchased by Eli Sohn at the price of $4,500, $1,500 of which he paid in cash, and for the balance executed his two notes for $1,500 each, payable in one and two years, respectively, from date. The trustee conveyed the property to him on the 21st of November, 1910, and he immediately took possession of it. Copelan then brought this suit, praying to have the sale and conveyance set aside, and obtained the relief sought. Upon appeal to this court by defendant, the decree of the circuit court was affirmed, on the ground that the sale had been made prematurely, and was in violation of the terms of the trust, and the cause was remanded for further proceedings. 75 W. Va. 83. The circuit court then referred the cause to a commissioner to state accounts between Copelan and Sohn, charging the latter with the rental value of the property during the time he was in possession, and the former with the amount of purchase money which Sohn had paid on the Eisenman lien, the improvements he had put upon

the property and the taxes he had paid thereon, with interest. The commissioner filed his report April 1, 1915, and numerous exceptions were taken to it by both plaintiff and defendant. The court overruled all of plaintiff's and nearly all of defendant's exceptions, except his sixth which was sustained. That exception related to the rejection of a claim of $30 for repairing floors, which the court considered a proper claim and allowed it. From a written opinion prepared by the chancellor, it appears that he examined carefully every item of the commissioner's account, corrected some mistakes in his calculations of interest, and gave Sohn credit for some small items which had been rejected by the commissioner, and struck out others with which he had been improperly credited. The chancellor thus ascertained there was due from Copelan to Sohn the sum of $499.12, as of the 1st of March, 1915, instead of 459.42, as found by the commissioner, and decreed that Copelan pay said sum of $499.12 to Sohn, holding it to be a lien upon the property, of equal dignity with the unpaid balance due on the Eisenman lien, which he ascertained to be $1,820.34, as of March 1, 1915, and decreed to be paid by Copelan to Jeanne Eisenman, executrix of M. Eisenman, deceased, and provided for a sale of the property in the event the liens were not discharged in thirty days from the adjournment of the term. Sohn has appealed, assigning numerous errors. It is unnecessary to discuss them seriatim in this opinion, as all of them are to be determined according to the same general principles of equity. This case is similar to *Lisky* v. *Snyder,* 66 W. Va. 149, and the principles there applied are applicable here.

Considering the character of the items rejected, as not being in the nature of permanent improvements, we fail to see wherein the chancellor has departed from correct principles governing cases of this character. Many of Sohn's charges were properly rejected, because they were in the nature of trade fixtures, such as electric lamps and fans, placed in the building at the instance of his tenant for his own convenience, and which, under the terms of lease, he had a right to remove from the building; and others, because they were

not essential to the preservation of the building, or added nothing to its value.

Sohn had possession from November 21, 1910, to November 21, 1914. The lower story of the building was used for a retail store room, and the upper rooms for a dwelling. When Sohn purchased, November 21, 1910, the store room was occupied by one L. S. Spaulding under a lease from Copelan, made prior to the trustee sale and extending to May 21, 1911, at a rental of $40 per month. . Sohn immediately raised his rent to $60 per month, and, for the six months the building was occupied by Spaulding, the commissioner charged Sohn with $360 rent, and interest thereon to March 1, 1915, making a total for this period of $446. Both parties excepted to this item, Copelan because the commissioner did not charge Sohn at the rate of $100 per month, that being the rental value of the property, and Sohn because he was not given credit for $80 rent, proven to be due from Spaulding, and not paid. Sohn's liability to Copelan depends not upon what he actually made or could have made by renting the property, but upon its fair rental value, which is proven to be $100 per month. Hence this charge was properly allowed. For the remainder of the time, except from May 21st to June 1st, 1911, when the house was vacant on account of some repairs being made, Sohn is charged with rent at the rate of $100 a month. The time being thirty-six months, the amount is $3,600, to which interest is added. Sohn insists that he collected only $3,150 rent for that period, and should not be charged with more than he actually received. This contention is not supported by the law. He is chargeable with the fair rental value of the property, whether he actually collects the rent or not. *Lisky* v. *Snyder, supra.* He leased the property, for the three years, to one Shein at a stipulated rental of $100 a month, payable monthly, and it is proven by the uncontradicted testimony to be worth at least that sum. Some witnesses say it is worth more. Sohn's reducing the rent to $85 a month for part of the time, at the request of his tenant, does not affect his liability to Copelan for the full rental value.

During the time Sohn had possession he paid premiums for

fire insurance on the property to the amount of $333.20. The commissioner rejected all of his claim on that account, except $107.78, the amount of premiums unearned at the time Copelan regained possession, and for which Copelan received credit on reinsurance. Sohn excepted and, his exception being overruled, he assigns as error the rejection of this claim. Having purchased in good faith, he was entitled to the same degree of protection, at least, as the law accords to a mortgagee in possession. Copelan had bound himself to keep the property insured for the protection of his creditor, Eisenman. If he had failed to do so, Eisenman or Wysor, the trustee, could have insured it at his expense; and, in his deed to Sohn, the trustee required him (Sohn) to keep it insured to protect the same debt. Being thus bound to bear the expense of insurance, it is immaterial to Copelan whether it was paid by the trustee or by Sohn, as the one who paid it would be performing his obligation, and would be entitled to be reimbursed by him. However, he is not necessarily bound for the cost of all the insurance carried by Sohn. A part of the time Sohn carried as much as $7,000 insurance on the building. A portion of this was evidently for his own protection, and not alone in fulfillment of his undertaking with the trustee. $4,000 being the amount of the debt which it was Copelan's duty to protect by insurance, it is only just and equitable that he should reimburse Sohn to the extent of the cost of that amount of insurance, for a period of four years, the time Sohn had possession. It appears from the testimony of Allen E. Klingel, an insurance agent, that the premium on $7,000 fire insurance for a period of six years would be $333.20. With these figures as a basis, we estimate the premium on $4,000 insurance, for a period of four years, to be $126.92, which with interest to March 1, 1915, aggregates $159.92. The amount of money decreed to be paid by Copelan to Sohn will be increased by adding to it the above sum, so as to make the recovery $659.04, with interest thereon from March 1, 1915, until paid, instead of $499.12; and, as thus corrected, the decree will be affirmed, with costs of this appeal to appellant.

*Modified and affirmed.*